Max Moskowitz (MM 5866)
Douglas Q. Hahn (DH 3032)
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York 10036
Telephone: (212) 382-0700
Facsimile: (212) 382-0888

Attorney for Plaintiff Croton Watch Co., Inc.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CROTON WATCH CO., INC.,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL JEWELER MAGAZINE, INC.<br>and TESLAR INSIDE CORPORATION.<br><br>Defendants. | Civil Action No.:<br><br>**COMPLAINT** |



JAN 27 2006
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, Croton Watch Co., Inc. (hereinafter "Plaintiff" or "Croton"), by and through its undersigned attorneys, as and for its Complaint against defendants National Jeweler Magazine ("National Jeweler") and Teslar Inside Corporation ("Teslar") (collectively National Jeweler and Teslar are "Defendants"), alleges as follows:

### THE PARTIES

1. Plaintiff Croton is a New Jersey corporation, with its principal place of business located at 195 Anderson Ave., Moonachie, New Jersey, 07074.

{00711990.1}

2. Defendant National Jeweler is owned by VNU Business Publications, USA, Inc., with offices at 770 Broadway, New York, New York 10003. VNU Business Publications, USA, Inc. is a subsidiary of VNU, Inc., which is located at the same address.

3. Defendant Teslar Inside Corporation is a Florida corporation and is located at 169 East Flagler St., Suite 1701, Miami, Florida 33131.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over defendants pursuant to CPLR 301 and 302 by reason of the fact that they reside in this District, transact business in the State of New York and in this District and because they have committed tortious acts within and without the State of New York and in this District having an injurious effect on plaintiff in New York.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1338 and 15 U.S.C. §1121. This Court also has supplemental jurisdiction over the claims for relief herein which arise under New York statutory and/or common law pursuant to 28 U.S.C. §1367(a), since these claims are so related to the federal statutory claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), and §1400 because defendants reside in and/or conduct business in this judicial District, and a substantial part of the events giving rise to the claims occurred in this District.

## FACTS COMMON TO ALL COUNTS

**Plaintiff Croton**

7. The CROTON trademark for watches has been in use since 1878 and was acquired by the current President of Croton, David Mermelstein, in 1991.

8. Croton stocks, and has available for sale, approximately two thousand styles of "CROTON" watches. The business markets a few hundred other watch styles under different brand names.

9. Approximately 1,500 watch styles can be obtained on the website of Croton at: www.crotonwatch.com. The CROTON brand is advertised at sports events and at trade shows.

**Defendant National Jeweler**

10. According to their website at www.nationaljeweler.com, "National Jeweler is the world's most important jewelry resource - the publication of record. National Jeweler presents up-to-the-minute news to its readers in every issue twice a month. With the magazine's first four editorial pages devoted to the latest breaking news, and followed by news pages keyed to specific markets, readers can quickly find the information they need on the latest happenings in the marketplace. National Jeweler also keeps up with the latest trends in fashion with its color fashion folios and other fashion coverage."

11. The same website states that "Nationaljeweler.com is a VNU Business Publications, USA, Inc. and VNU eMedia production." It elaborates that "VNU Business Publications, USA, Inc. penetrates and enlightens the jewelry industry with print, face-to-face, and online information. VNU eMedia enables VNU Business Publications, USA, Inc. to publish in the fast-paced online market."

**Defendant Teslar**

12. Teslar, like plaintiff Croton, is a watch designer and manufacturer. Teslar owns the registered trademark, "Philip Stein," relating to a particular watch design.

13. In July 2004, Teslar filed an action in the Federal District Court for the Southern District of Florida against Croton and ShopNBC.com, alleging that Croton infringed Teslar's trademark rights.

14. Croton and ShopNBC.com denied the allegations and filed counterclaims against Teslar. In December 2004, before proceeding on the merits, the parties amicably agreed to a settlement agreement under which no party admitted fault. There was no discovery, nor did the court make <u>any</u> findings of law or fact.

15. To effectuate and bind the parties to the settlement, Croton and Teslar jointly requested that the district court judge sign a formal consent judgement detailing the specific terms previously agreed upon <u>by the parties</u>. The final judgement was thereby entered into public record and the case was closed.

**Defendants' False and Defamatory Statements About Plaintiff**

16. Upon information and belief, representatives of defendant Teslar and defendant National Jeweler discussed the terms of the settlement agreement. Following that discussion, an article entitled "Philip Stein Teslar wins trademark case" appeared in the March 1, 2005 edition of the National Jeweler Magazine and on the nationaljeweler.com website.

17. Upon information and belief, Defendant Teslar knowingly made false and defamatory statements about Plaintiff Croton to National Jeweler, including statements about Teslar's supposed victory against Croton in court and that the judge found Croton's watch to infringe on Teslar's trademark.

18. National Jeweler did not check the publicly available court records, nor did it contact Croton to verify Teslar's statements. It published an article about the lawsuit based on Teslar's (biased) word only, and without any regard for the truth.

19. The article's description of the lawsuit is entirely false and misleading. Beginning with the title, and straight through to the very end, the article purportedly describes Teslar's victory in official court proceedings as well as the judge's findings of fact and law. The judge made no such findings. The final consent judgement was based entirely on a joint settlement agreement – neither party won the suit.

20. Particularly, the article's title states "Philip Stein Teslar wins trademark case" but in fact, there was no winner in the suit.

21. The third paragraph states "[t]he judge ruled that the [Croton watch] violated Philip Stein Teslar's trade dress protection." The judge made no such ruling.

22. The article also included a picture of Croton's allegedly infringing watch (the caption specifically states it is the Croton watch), yet the picture is actually one of a Teslar watch, and not one sold by Croton.

23. In its entirety, the National Jeweler article describes Teslar's victory in court, claims to cite "court papers," and explains why the Croton watch infringed Teslar's trademark – even though the court never made any finding of infringement.

24. The article made completely and utterly false statements with regard to the events of the lawsuit, and made defamatory statements about Croton and Croton's products.

25. Upon information and belief, Defendant Teslar made these false and defamatory statements to Defendant National Jeweler to bolster the reputation and standing of Philip Stein Teslar and with an intent to harm competitor Croton's business reputation.

{00711990.1}

26.  Upon information and belief, Defendant National Jeweler published this article, knowing that it contained false and defamatory statements, in expectation of future advertising revenue from Teslar in return for the favorable coverage Teslar received in its publication.

27.  National Jeweler was grossly negligent in its reckless disregard for the truth by publishing the article based wholly on its discussion with a Teslar representative. Furthermore, it essentially aided and abetted Teslar's defamatory statements, and published them to the entire jewelry and watch industry.

28.  After National Jeweler was contacted by Croton's counsel and informed of the false and defamatory aspects of the article, the National Jeweler representative defended its lack of responsible journalism and reckless disregard for the truth, stating that the article's journalist merely "fell for Teslar's spin" of the lawsuit.

29.  National Jeweler has since taken no steps to correct the article or make any attempt to undo the damage done to Croton's reputation.

30.  The same article is still published on the www.nationaljeweler.com website, and continues daily to harm Croton's reputation. In fact, a search on Google.com for "teslar croton" will list that article on www.nationaljeweler.com as the number one search result.

31.  Being that National Jeweler is, as it maintains, "the world's most important jewelry resource," the damage caused by this article is enormous. The false and defamatory statements made by Teslar and published by National Jeweler have severely damaged plaintiff's reputation and standing throughout the watch and jewelry business.

32.  Based on the false information in the article that Croton watches were found to be infringing on Teslar's trademark, potential retailers of Croton's watches are now hesitant to sell

Croton watches for fear of being targeted like ShopNBC.com was, in similar lawsuits against Croton.

33. In addition, Croton's competitors, in reading the National Jeweler article, were led to believe that Croton has weak trademark protection and presents a ripe target for litigation, subjecting Croton to expensive legal costs.

34. Most importantly, Croton's reputation and standing as a respected leader in the watch and jewelry business was severely damaged by the National Jeweler article, which portrayed Croton as a manufacturer of "knock offs." Croton's customers will be reluctant to purchase the same large quantities of watches, at the same price premium, that they did before the article was published.

## FIRST CLAIM FOR RELIEF
*(Per se Defamation)*

35. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36. Both Defendants made false statements impugning the integrity and reputation of Croton, as described herein, which statements constitute per se defamation under the common law of the State of New York.

37. Defendant Teslar made false and defamatory statements about plaintiff with the knowledge and expectation that those statements would be published and distributed throughout the jewelry and watch industry.

38. Defendant Teslar committed the aforesaid acts to harm Plaintiff and Plaintiff's business and to deter Plaintiff's suppliers and customers from doing business with Plaintiff.

39. Defendant National Jeweler, published those statements either knowing they were false and defamatory, or with reckless disregard for the truth. The jewelry industry publication was intended (and expected) to be seen by to Plaintiff's customers, competitors and to other third parties.

40. By reason of the foregoing, Plaintiff has suffered and continues to suffer severe irreparable harm for which there is no adequate remedy at law.

41. By reason of the foregoing, Plaintiff is entitled to an award of damages from defendants in an amount to be determined at trial but in no event less than $1,000,000.00.

## SECOND CLAIM FOR RELIEF
*(Tortious Interference with Prospective Economic Advantage)*

42. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 34 of this Complaint as if fully set forth herein.

43. Having done business under the Croton name for many years, Plaintiff has developed and maintains valuable business relationships with suppliers, customers and potential customers.

44. Defendants' activities have falsely informed Plaintiff's customers, potential customers and competitors that Plaintiff has suffered legal difficulties and has cast doubt on Plaintiff's integrity and reputation in the watch and jewelry business. Such statements are false and either known by Defendants to be false when made or made with a reckless disregard for the truth or falsity thereof.

45. In making these false statements, Defendants intended to harm and have in fact harmed plaintiff's business reputation and caused plaintiff to lose good will.

{00711990.1}

46. Defendants' conduct has impaired and continues to impair Plaintiff's relationships with customers and competitors and has damaged Plaintiff's ability to do business.

47. Plaintiff has lost valuable business opportunities as a direct and proximate result of Defendants' acts.

48. By reason of the foregoing, Plaintiff has suffered and continues to suffer severe irreparable harm for which there is no adequate remedy at law.

49. By reason of the foregoing, Plaintiff is entitled to an award of damages from defendants in an amount to be determined at trial but in no event less than $1,000,000.00.

## THIRD CLAIM FOR RELIEF
*(False Advertising and Unfair Competition – 15 U.S.C. §1125(a))*

50. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 34 of this Complaint as if fully set forth herein.

51. This is a claim against Defendants, jointly and/or individually, false advertising and unfair competition arising under Section 43 of the Lanham Act, 15 U.S.C. §1125(a).

52. Defendant National Jeweler made false, misleading and disparaging statements, in writing, to a broad audience of readers, including Plaintiff's customers, potential customers and competitors which falsely disparage Plaintiff's business, integrity and reputation.

53. The article itself was extremely commercial in nature. All information was provided by Teslar. There was no journalistic aspect to the article, considering the false information could have been easily discovered by inspecting public court records or contacting Croton or Croton's counsel for their comments. National Jeweler gave the "free press" to Teslar in hopes of obtaining a more permanent advertising arrangement.

54. The article was in fact an advertisement masquerading as a news story, promoting Teslar's reputation while disparaging that of Croton's. The events were reported <u>exactly</u> as stated by Teslar, intended to <u>promote</u> the Teslar products and to disparage the products and reputation of its competitor, Croton.

55. By appearing as a news article and not revealing itself as the advertisement it actually was, the article is far more damaging to Croton, because readers will more readily believe the content and assume it was verified by the publisher. Readers would be more skeptical if they knew the content was dictated by Teslar (as is the case in typical advertisements).

56. By reason of the foregoing acts, Defendants have engaged and are engaging in malicious, willful and deliberate false advertising and unfair competition in violation of the Lanham Act.

57. By reason of the foregoing, Plaintiff has been damaged by the Defendants in an amount to be determined at trial but in no event less than $1,000,000.00, plus pre-judgment interest from the commencement of Defendants' unfair competitive acts.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

    A. Requiring Defendants to pay to Plaintiff such damages as Plaintiff has sustained as a consequence of Defendants' Defamation, Tortious Interference with Prospective Economic Advantage, and False Advertising and Unfair Competition;

    B. Ordering that Plaintiff recover the costs of this action together with reasonable attorneys' and investigators' fees and prejudgment interest;

{00711990.1}

C. Awarding Plaintiff damages in an amount to be determined at trial but in no event less than $3,000,000 together with the costs and disbursements which Plaintiff has incurred in connection with this action and Plaintiff's reasonable attorneys fees;

D. Granting Plaintiff such other and further relief as the Court may deem just and proper.

Dated: New York, New York
January 27, 2006

OSTROLENK, FABER, GERB & SOFFEN, LLP

By: _____
Max Moskowitz (MM 5866)
Douglas Q. Hahn (DH 3032)
1180 Avenue of the Americas
New York, New York 10036
Telephone: (212) 382-0700
Facsimile: (212) 382-0888

Attorneys for Plaintiff Croton Watch Co., Inc.

{00711990.1}