UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CROTON WATCH CO., INC.,

        Plaintiff,

v.

NATIONAL JEWELER MAGAZINE, INC. AND
TESLAR INSIDE CORPORATION,

        Defendants.

CASE NO. 06-CV-662 (GD)

## NOTICE OF MOTION

PLEASE TAKE NOTICE, upon the accompanying Memorandum of Law in Support of Teslar Inside Corporation's Motion to Dismiss, the exhibits thereto, and upon all pleadings heretofore had herein, the undersigned, pursuant to Fed.R.Civ.P. 12(b)(6), will move this Court, the United Sates District Court in the Southern District of New York, on a date and at a time designated by the Court, for an Order dismissing this action because the Complaint fails to state a claim upon which relief may be granted.

Respectfully submitted,

BROAD AND CASSEL
Attorneys for Defendant
One Biscayne Tower, 21st Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 373-9467
Facsimile: (305) 995-6387

By: _____
Daniel S. Newman, P.A.(DN 0959)
New York Bar No.: 2479897

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion to Dismiss has been served via facsimile upon Max Moskowitz, Esq. Ostrolenk, Faber, Gerb & Soffen, LLP, 1180 Avenue of the Americas, New York, New York 10036 on the 21st of February, 2006.

By: _____
DANIEL S. NEWMAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CROTON WATCH CO., INC.,

    Plaintiff,

v.

CASE NO. 06-CV-662 (GD)

NATIONAL JEWELER MAGAZINE, INC. AND
TESLAR INSIDE CORPORATION,

    Defendants.

## DEFENDANT TESLAR INSIDE CORPORATION'S
## MOTION TO DISMISS AND MEMORANDUM OF LAW

Pursuant to Rule 12(b)(6), Fed. R. Civ. P., Defendant, TESLAR INSIDE CORPORATION ("Teslar"), moves for entry of an order dismissing the Complaint filed by Plaintiff, CROTON WATCH CO., INC. ("Croton"), for failure to state a cause of action and and as grounds therefore states:

### Background

Croton's allegations arise from an article published by the other Defendant, NATIONAL JEWELER MAGAZINE, INC. ("National"). Croton alleges that National and Teslar acted in concert to publish a supposedly defamatory article both in National's magazine and on its website. The alleged defamatory article discussed a previously litigated matter between Croton and Teslar in which, as a result of a settlement agreement, the United States District Court for the Southern District of Florida issued an injunction ("final consent judgment") ordering Croton and a co-defendant, ShopNBC, to cease all sales of a certain style of watch. Croton claims that information contained in the article was incorrect and as a result, it suffered damages due to

CASE NO. 06-CV-662 (GD)

Defendants' defamation *per se*, tortious interference with a prospective economic advantage, and false advertising and unfair competition according to the standards set forth under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) (the "Lanham Act"). Teslar, however, is not responsible for any alleged damages and no imputation of any malfeasance can be attributed to Telsar's actions, or lack thereof.

In ruling on a motion to dismiss, this Court must view the Complaint in the light most favorable to the plaintiff, and must limit its consideration to the pleadings and any exhibits attached thereto. *See Gant v. Wallingford Bd. Of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995); *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). The Court must liberally construe the Complaint's allegations in the plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). When a party seeking dismissal requests a court to review materials outside of the complaint, the Federal Rules of Civil Procedure typically require the court either to ignore the additional materials or to convert the motion to one for summary judgment. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). However, when a plaintiff asserts a claim founded upon a written instrument, a court may consider such an instrument in ruling on a Rule 12(b)(6) or Rule 12(c) motion, even if the instrument was not attached to the complaint. *Abbott v. Harris Publs. Inc.*, 1998 U.S. Dist. LEXIS 18990 at *12 (S.D.N.Y. Dec. 4, 1998); *Rodriguez v. American Friends of Hebrew Univ.*, No. 96 Civ. 240, 1998 U.S. Dist. LEXIS 3701 at *3 (S.D.N.Y. Mar. 25, 1998) (permitting consideration of documents referenced in the complaint and in plaintiff's possession which were relied upon in bringing the suit); *National Football League v. Dallas Cowboys*, 922 F. Supp. 849, 853 (S.D.N.Y. 1996). When a plaintiff relies on materials not included in the complaint, those materials are integral to a full and proper

consideration of the complaint and may be reviewed during a court's review of motions to dismiss. *Young v. Cigna Co. and Ins.*, No. 98 Civ. 2903, 1998 U.S. Dist. LEXIS 19909, at *3 (S.D.N.Y. Dec. 21, 1998). The Court should not dismiss a Complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiffs cannot prove any set of facts that support a claim for relief. *See Conley v. Gibson*, 355 U.S. 41, 45 (1957). But in ruling on a motion to dismiss, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a dismissal." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

Cognizant of this standard, Defendant Telsar submits that, as described below, Plaintiff's claims cannot survive.

### All of the statements published by National are substantially true and thus, any claims by Croton for damages resulting from defamation *per se* must be dismissed.

In New York, a claim of defamation must be supported by four elements. A plaintiff must plead that: (1) the defendant made a false and defamatory statement; (2) of and concerning the plaintiff; (3) that was published to a third party; and (4) the statement was made with the requisite degree of fault which resulted in special harm or *per se* actionability. *Weinstein v. Friedman*, No., 1996 U.S. Dist. LEXIS 3672 (S.D.N.Y. Mar. 26, 1996) (citing *Church of Scientology Int'l v. Eli Lilly & Co.*, 778 F. Supp. 661, 666 (S.D.N.Y. 1991)). New York courts have held that a defamatory statement is one which will "expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Foster v. Churchill*, 87 N.Y.2d 744, 751 (N.Y. 1996) (citing *Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369, 379 (N.Y. 1977)).

3

BROAD and CASSEL
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida 33131-1811  305.373.9400

A court's inquiry does not focus solely on the alleged defamatory statement. In order to determine whether a publication is in fact defamatory, the court must "consider the publication as a whole," and "not pick out and isolate particular phrases." *Immuno AG v. J. Moor-Jankowski*, 77 N.Y.2d 235, 250 (N.Y. 1991). In addition to reviewing the entirety of the publication, the court must also focus on the apparent scope, intent, and background of the issuance regarding the publication. *Davis v. Ross*, 754 F.2d 80, 83 (2d Cir. 1985). The court should not impose its own judgment on the meaning of the publication but instead view the publication from the perspective of the average reader. *Id.*

The Second Circuit holds that "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). Furthermore, New York law finds that "truth is an absolute, unqualified defense to a civil defamation action." *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 366 (S.D.N.Y. 1998) (quoting *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir. 1986)). "It is an equally fundamental concept that 'substantial truth' suffices to defeat a charge of libel.'" *Jewell*, 23 F. Supp. 2d at 366 (quoting *Fairley v. Peekskill Star Corp.*, 83 A.D.2d 294, 297 (N.Y. App. Div. 1981)). New York law qualifies statements to be "substantially true" if the statement would not "have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Love v. William Morrow & Co.*, 193 A.D.2d 586, 588 (N.Y. App. Div. 1993) (quoting *Fleckenstein v. Friedman*, 266 N.Y. 19, 23 (N.Y. 1934)); *see also Cafferty v. Southern Tier Publ'g Co.*, 226 N.Y. 87, 93, (N.Y. 1919) ("When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed

out of their ordinary usage to sustain a charge of libel, no legal harm has been done."). "Under New York law, it is not necessary to demonstrate complete accuracy to defeat a charge of libel. It is only necessary that the gist or substance of the challenged statements be true." *Printers II, Inc. v. Professionals Publ'g, Inc.*, 784 F.2d 141, 146 (2d Cir. 1986); *Sharon v. Time, Inc.*, 609 F. Supp. 1291, 1294 (S.D.N.Y. 1984) ("Defendant is permitted to prove the substantial truth of this statement by establishing any other proposition that has the same 'gist' or 'sting' as the original libel, that is, the same effect on the mind of the reader.").

In the instant case, Croton's Complaint specifically references two documents. The first document that Croton discusses is the National article that allegedly contains the defamatory statements. Croton alleges that National published the article in a print magazine and on its website. Croton repeatedly discusses the magazine article and includes a citation to Croton's website.[1] (*See* Pl.'s Compl. ¶ 30). All of Croton's damages and claims stem from the publication of the single article. Because Croton relied upon the article as the foundation of its Complaint, the article is an integral part of the Complaint and should be reviewed in conjunction with this Court's consideration of this motion to dismiss. A copy of The National article is attached Exhibit A.

The Complaint also references a matter that was previously litigated matter between Teslar, Croton, and ShopNBC before the United States District Court for the Southern District of Florida. In that matter, the district court entered an injunction which prevented Croton and ShopNBC from continuing any sales of a certain style of watch. Croton's entire Complaint disputes National's characterization of this previous litigation. Croton's Complaint makes

---

[1] Croton's Complaint also references a Google search that would produce the required article as the number one result, but following Croton's search instructions produces no such link.

5

BROAD and CASSEL
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd. Miami, Florida 33131-1811  305.373.9400

extensive allegations relating to the details of the previous litigation. (*See* Pl.'s Compl. ¶ 13-15). Croton relies on its interpretation of the disposition of the previous settlement as grounds for seeking redress for the supposedly defamatory remarks of National. Because Croton relies on the specific language and terms of the "formal consent judgment," which detailed the "specific terms previously agreed upon by the parties," the judgment is an integral part of the Complaint and should be reviewed in conjunction with this Court's consideration of this motion to dismiss. The consent judgment is attached as Exhibit B.

As evidenced by Exhibit B, the representations made by National in its article regarding the suit between Teslar and Croton were either completely true or at the very least, substantially true. The article accurately reflects the disposition of the suit and states that "U.S. District Court Judge Alan S. Gold issued a permanent injunction in mid-December." (*See* Exs. A & B). Contrary to Croton's assertions in its Complaint, at no time did the National article cite "court papers." (*See* Pl.'s Compl. ¶ 23; *see also* Ex. A). The article also correctly reported that the other defendant, ShopNBC, which previously sold 116 pieces of the disputed watch, was also forced to abide by the terms of the injunction. When the article is viewed as a whole, and not viewed as separate and individually pled segments and pieces, it is clear that the article accurately reports to the public that the district court entered an injunction in favor of Teslar and against Defendant Croton, which barred ShopNBC and Croton from selling any more disputed watches.

Even if all of Croton's allegations were in fact found to be defamatory, which they are not, the court still should dismiss the Complaint as the article's content falls within the limited protection of New York's "single instance exception". The rule is narrowly applied to claims of

defamation where an individual is charged with a "single dereliction in connection with his or her trade, occupation, or profession [and] does not necessarily charge that party with general incompetence, ignorance or lack of skill, [the charge] is not deemed actionable unless special damages are pleaded and shown." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 180 (2d Cir. 2000) (citing *Bowes v. Magna Concepts, Inc.*, 166 A.D.2d 347, 348 (N.Y. App. Div. 1990)). The single instance rule has also been applied to affirm dismissals of defamation claims against business entities. *RMS Tech., Inc., v. NYNEX Computer Servs. Co.*, 1993 N.Y. Misc. LEXIS 616, at *8 (N.Y. June 24, 1993); *see also Ruder & Finn v. Seaboard Sur. Co.*, 52 N.Y.2d 663 (N.Y. 1981). The rule serves to protect those who make single errors in judgment, "which the law presumes not to injure reputation." *Armstrong v. Simon & Schuster*, 85 N.Y.2d 373, 379 (N.Y. 1995).

In the instant case, Croton alleges that National published one supposedly defamatory article. The courts apply the single instance rule specifically to instances such as this where a party has made a lone mistake that is "confined to denigrating the quality of goods or services rather than the basic integrity of a business or its creditworthiness." *RMS Tech., Inc.*, 1993 N.Y. Misc. LEXIS 616, at *8. The purpose of the single instance rule is to protect those parties who err and have not presumptively caused damage to a person in his business or profession. The courts allow such errors because the mistakes "would imply no more than that the person was human." *Celle*, 209 F.3d at 181. Most important to the current facts, the single instance exception is not actionable unless special damages are pled. *RMS Tech., Inc.*, 1993 N.Y. Misc. LEXIS 616, at *7; *see also Drug Research Corp. v. Curtis Publ. Co.*, 7 N.Y.2d 435 (N.Y. 1960) (failing to itemize damages is a representation of general damages and therefore, legally

insufficient); *Aronson v. Wiersma*, 65 N.Y.2d 592, 595 (N.Y. 1985) (finding that mere allegations of loss do not constitute special damages).

Assuming *arguendo*, that any part of the National article is in fact defamatory, such remarks fall under the protective umbrella of the single instance rule. None of the remarks within the article discuss or critique the integrity of Croton as a business or its creditworthiness. Instead, all of the article's focus is arguably on the quality of the goods. The heart of the article communicates that "[t]he watch did not contain the 'Teslar technology.'" (Exhibit A). In fact, the article neither makes a single reference to the quality of Croton as a corporation nor attempts to draw conclusions of the future ramifications of the injunction.

Due to the fact that the single instance exception would shield National's article from being actionable, Croton must plead special damages. In its Complaint, Croton merely alleges that it is entitled to damages "in an amount to be determined at trial." (*See* Pl.'s Compl. ¶41). In an analogous case, the *Bowes* court reversed a lower court's denial of defendant's motion to dismiss, holding that a single mistake in a magazine article fell within the purview of the single instance exception. *Bowes*, 166 A.D.2d at 348. Because the plaintiff's general allegations of damages failed to meet the requisite standard for pleading special damages, the court refused to proceed. *Id.* at 349. Like the *Bowes* plaintiff, Croton has also failed to plead special damages, and therefore Count I of the Complaint should be dismissed.

Because National's article contained true statements regarding the ultimate disposition of the prior litigation, the article is sufficiently true to defeat all claims. Moreover, any mistake on behalf of National is protected by the single instance exception to defamation *per se*. For the foregoing reasons, Count I must be dismissed.

8

**BROAD and CASSEL**
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd. Miami, Florida 33131-1811  305.373.9400

### Croton's fails to identify a single business relationship that was damaged due to the National's article.

Under New York law, a claim of tortious interference with a prospective economic advantage must fail where a plaintiff fails to show: (1) the existence of business relations with a third party; (2) a defendant's interference with such a relationship; (3) that the defendant, having knowledge of such relationship, intentionally interfered with it; and (4) injury to the business relationship. *See Purgess v. Sharrock*, 33 F.3d 134, 141 (2d Cir. 1994). "Furthermore, [a] plaintiff must allege that defendants directly interfered with the business relationship by directing 'some activities towards the third party and convincing the third party not to enter into a business relationship with the plaintiff.'" *Marek v. Old Navy (Apparel) Inc.*, 248 F. Supp. 2d 275, 280 (S.D.N.Y. 2004) (quoting *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 (S.D.N.Y. 1997)); *see also Four Finger Art Factory, Inc. v. Dinicola*, 2000 WL 145466, at *7 (S.D.N.Y. Feb. 9, 2000) (finding that a properly pled complaint must allege relationships with specific third parties); *Winner Int'l v. Kryptonite Corp.*, 2000 WL 145466, at *4 (S.D.N.Y. Feb. 27, 1996) ("As Winner does not allege that Kryptonite's conduct interfered with its business relationship with any specific party, it cannot establish the elements necessary for this tort . . .."). Because Croton has failed to allege any specific relationship that was interfered with as a result of National's article, the tortious interference claim must be dismissed.

In *Marek v. Old Navy (Apparel) Inc.*, 248 F. Supp. 2d 275, (S.D.N.Y. 2004), the court dismissed a claim of tortious interference where the claimant failed to identify a specific third party relationship. In *Marek*, defendant Old Navy Inc. prevented the plaintiff from obtaining a federal trademark for its brand, Old Army. Marek filed suit against Old Navy Inc. for a variety of claims, including tortious interference with a prospective economic advantage. Marek

9

**BROAD and CASSEL**

One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida 33131-1811  305.373.9400

claimed that several unnamed parties contemplated purchasing the brand. "Given the complete lack of any allegations that defendants had knowledge of any specific third parties interested in purchasing or licensing the Old Army mark from plaintiff or, having obtained such knowledge, directed any activities towards such third parties or acted to interfere in any manner with their prospective business relationship with plaintiff," the court dismissed the tortious interference claim. *Id.* at 281.

Nowhere in its Complaint does Croton name a **single** business relationship that was harmed as a result of the article. Instead, Croton generally alleges that it has lost "valuable business opportunities." *See* Plaintiff's Complaint, ¶ 47. Under *Marek* however, failure to name a specific third party disposes of any tortious interference claims. *See Four Finger Art Factory, Inc.*, 2000 WL 145466, at *7. Even assuming *arguendo* that Croton's bald assertions suffice to allege with specificity a third party, the Complaint still fails because it does not claim that the reason that those parties did not start or continue relations with Croton was due to the National article. In fact, nowhere in Croton's Complaint is there a single allegation that any of Croton's customers, competitors or other third parties actually read the National article. No facts exist to implicate National or Teslar as a reason for Croton's allegedly lost business opportunities. Because the claim is severely deficient and fails to name either a third party relationship that was lost or a single person who read the article and therefore retracted from starting or continuing a relationship with Croton, Count II of the Complaint of tortious interference with a prospective business relationship must be dismissed.

CASE NO. 06-CV-662 (GD)

### Croton has not alleged several critical elements in its claim of violations of the Lanham Act

To properly plead a violation of the Lanham Act, a plaintiff must show that: (1) the defendants made a false or misleading representation regarding the nature, characteristics, qualities, or geographic origin of another person's goods, services, or commercial activities; (2) the representations were used in commerce; (3) the representations were made in the context of commercial advertising or promotion; and (4) that the defendants' actions made the plaintiff believe it would be damaged by the representations. *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 628-629 (S.D.N.Y. 2003) (citing *National Artists Mgm't Co., Inc. v. Weaving*, 769 F. Supp. 1224, 1230 (S.D.N.Y. 1991)). "A claim under 15 U.S.C. § 1125(a)(1)(B) requires a **fundamental showing** that the plaintiff is in commercial competition with defendants." *Gmurzynska*, 257 F. Supp. 2d at 629 (emphasis added); *see Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 942 F. Supp. 209, 215 (S.D.N.Y. 1996).

The *Gmurzynska* court addressed a similar factual scenario. In that case, a German art gallery filed a claim against both a New York art gallery and several renowned art experts. *Id.* at 629. The German gallery alleged that the experts defamed the quality and genuineness of the art in German gallery to and for the benefit of the New York gallery. The German gallery also alleged that the experts arranged for a false and misleading article to be published about the gallery. *Id.* The *Gmurzynska* court found it significant that "none of [the] alleged misstatements on their face were uttered by parties in commercial competition" with the plaintiff. *Id.* Because the German gallery could only allege that the experts made allegedly false statements, and the experts were not in any commercial competition with the gallery, the court granted the motion to dismiss.

CASE NO. 06-CV-662 (GD)

Analogously to the art gallery owners in *Gmurzynska*, Teslar never made a single statement in a commercial setting or otherwise. Even Croton never alleges that Teslar made any statements. It is clear from the Complaint that National, and not Teslar, wrote and published the article in dispute. The actual publisher of the statements presents a critical analysis under the Lanham Act. As evidenced by the court's holding in *Gmurzynska*, being in commercial competition and acting on behalf of a party in commercial competition are two different positions as far as it concerns the Lanham Act. The Lanham Act requires that the speaker of the allegedly false statement also be the commercial competitor. *Id.* National is not, nor ever has been, a commercial competitor of Croton. Furthermore, Teslar never, nor ever has, made any representations in commercial advertising or promotion about Croton. Because of these two facts, Croton's Complaint must be dismissed as it fails to properly allege a claim under the Lanham Act.

Croton's failure to properly state a claim under the Lanham Act does not end with its inability to allege a commercial competitor. In addition, Croton's Complaint is in fact not based on any type of "commercial advertising or promotion," but rather a news article published by National. While both National's print magazine and website contain commercial advertisements, the issue addressed in Croton's Complaint focuses solely on the content of the news article and its factual basis. Specifically, Croton states that National "presents **up-to-the-minute news** to its readers in every issue twice a month. With the magazine's first four editorial pages devoted to the latest breaking **news**, and followed by **news** pages keyed to specific markets, readers can quickly find the information they need on the latest happenings in the martketplace." (*See* Pl.'s Compl. ¶ 10). Thus, Croton's own allegations indicate that the article is in fact, a news article.

BROAD and CASSEL
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida 33131-1811  305.373.9400

As the article is not commercial in nature, Croton fails to satisfy a basic element of maintaining a claim under the Lanham Act. *Gmurzynska,* 257 F. Supp. 2d at 629.

Croton attempts to extrapolate an argument that the news article is in fact a cleverly disguised commercial advertisement. (*See* Pl.'s Compl. ¶ 54). The court previously has provided a lengthy analysis of how to decide whether material is in fact an advertisement. In *Gordon and Breach Science Publishers S.A. v. American Institute of Physics,* 859 F. Supp. 1521 (S.D.N.Y. 1994), there was a dispute between for-profit publishers of scientific journals and non-profit publishers who produced a misleading journal rating system. As a result of the rating system, the for-profit publishers received low scores and therefore sought damages under the Lanham Act. The court grappled with the issue of whether the protested speech was commercial and thereby actionable under the Lanham Act. Ultimately, the court held that the rating system was not commercial even though it was intended to benefit the non-profit publishers. *Id.* at 1541; *see also Bolger v. Youngs Drug Prods. Corp.,* 463 U.S. 60, 67 (1983) (finding that economic motivation is insufficient in itself to turn materials into commercial speech). The court dismissed the plaintiff's claims for failing to cite to materials that involved "commercial advertising or promotion." *Gordon and Breach Science Publishers S.A.,* 859 F. Supp. at 1543.

As decided in *Gordon and Breach Science Publishers S.A.,* National's article is not commercial. Even assuming that the Croton's baseless allegations are true and that article was commercially motivated (which it clearly was not) such speech still does not qualify as commercial speech. *Bolger,* 463 U.S. at 67. Finally, even assuming that Croton's allegations are true, and even assuming that the speech is commercial in nature, that still fails to implicate Teslar with regard to National's article supposed violation of the Lanham Act. Croton has not alleged

13

BROAD and CASSEL
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida 33131-1811  305.373.9400

that Teslar either reviewed or published the article. The absence of any allegation of Teslar's direct involvement demands that Count III must be dismissed with regards to Teslar.

Aside from the issue of whether the article is commercial, it is also critical to note that the Lanham Act does not clearly define or delineate "advertising or promotion." New York courts have held that "the words of the statute, 'advertising' and 'promotion,'... connote proactive, not merely reactive, communication. Lanham Act 'advertising or promotion' usually involves initiating notice to consumers, see, e.g., *Gordon and Breach Science Publishers S.A. v. American Institute of Physics*, 905 F. Supp. 169, 181-82 (S.D.N.Y. 1995); *H & R Indus., Inc. v. Kirshner*, 899 F. Supp. 995, 999-1000 (E.D.N.Y. 1995); *Mobius Management Sys. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1010-11 (S.D.N.Y. 1994); *Williams Elec., Inc. v. Bally Mfg. Corp.*, 568 F. Supp. 1274, 1282-83 n.24 (N.D. Ill. 1983), making a sales presentation, see, e.g., *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1382 (5th Cir. 1996); *Gordon and Breach Science Publishers, S.A.*, 905 F. Supp. at 180-81; or initiating conversations with consumers, see, e.g., *National Artists Management Co. v. Weaving*, 769 F. Supp. 1224, 1235 (S.D.N.Y. 1991)." *Fashion Boutique of Short Hills, Inc.*, 942 F. Supp. at 215. Croton has not, nor cannot, make any allegations that either National or Teslar made any proactive attempts to reach out to Croton's customers or business partners, because according to Croton's allegations, National passively published a news article. Croton has not established any nexus between the article and Croton's customers or business partners. Croton's claim fails because it does not establish that the article was ever advertised or promoted.

CASE NO. 06-CV-662 (GD)

As National's article does not fall within the definitions of commercial, advertising or promotion, and more importantly, National is not in commercial competition with Croton, Count III of the Complaint must be dismissed.

### Conclusion

For the foregoing reasons,

a. Count I (defamation *per se*) should be dismissed because all of the statements were true or substantially true. The statements also fall within the "single instance exception" so that Croton's Complaint is deficient because it does not plead special damages;

b. Counts II (tortious interference with a prospective economic advantage) should be dismissed because fails to identify specific economically interested third parties or business relationships;

c. Count III (false advertising and unfair competition) should be dismissed as the article was neither published by a person in commercial competition with Croton nor did the article constitute commercial advertising or promotion.

Respectfully submitted,

BROAD AND CASSEL
Attorneys for Defendant
One Biscayne Tower, 21st Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 373-9467
Facsimile: (305) 995-6387

By: _____
Daniel S. Newman, P.A.(DN 0959)
New York Bar No.: 2479897

CASE NO. 06-CV-662 (GD)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion to Dismiss has been served via facsimile upon Max Moskowitz, Esq. Ostrolenk, Faber, Gerb & Soffen, LLP, 1180 Avenue of the Americas, New York, New York 10036 on the 21st of February, 2006.

By: _____
DANIEL S. NEWMAN

MIA1\COMMLIT\345607.1
35325/0004