Max Moskowitz (MM 5866)
Douglas Q. Hahn (DH 3032)
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 382-0700
Facsimile:  (212) 382-0888

Attorney for Plaintiff Croton Watch Co., Inc.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CROTON WATCH CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL JEWELER MAGAZINE, INC. and TESLAR INSIDE CORPORATION. <br><br> Defendants. | Civil Action No.: <br> 06 CV 662 (GD) |

**PLAINTIFF'S MEMORANDUM OF LAW IN
<u>OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

**INTRODUCTION**

Plaintiff Croton Watch Co. Inc. ("Croton") opposes Defendant Teslar Inside Corp.'s ("Teslar") Motion to Dismiss which asserts that the Complaint, as filed, does not support the four elements for a claim of defamation, nor the four elements in support for a claim of tortious interference with business relationships, nor the four elements for a claim under the Federal Lanham Act.

In a nutshell, as evidenced by the accompanying Declarations, the factual basis for meeting the various criteria for each of the causes of actions exists and, regardless, the newly filed Amended Complaint with Exhibits A and B moots the Motion to Dismiss in its entirety.

{00756226.2}

At least two Croton customers, Exclusive Distributors, Inc. and Watch West, have contacted Croton to express concern that Croton has been cited in a widely read publication as having sold products found by a judge to infringe someone else's trademark. There were many other such calls. The economic harm is palpable and real and these customers have made the decision not to make certain purchases from Croton as a result of the publication. The direct cause of the harm to Croton was a press release a promotional advertisement by Teslar.

Teslar knew very well that Judge Gold made no factual or legal findings on the merits, and did not pass on any issue of whether actual infringement has occurred. The press release falsely states that "Teslar has won a trademark infringement case" when, in fact, the case sounded only in tradedress and was never "won" but settled by a consent injunction with neither party admitting liability. In fact, the defendant Teslar knew that there were no products to destroy or to otherwise get rid of, because counsel for the parties had discussed the fact that there were no such products. Nevertheless, they included in their press release, information about the Court ordering or requiring the destruction of infringing products. Teslar's press release was for purely business reasons, for the competitive purpose of extolling the alleged exclusivity of Teslar's product (which has not been established in Court) and to suggest that other competitive entities have knocked-off or copied or have been found to infringe on such alleged proprietary rights. The press release was obviously for the purpose of advertising and economic advantage and was published to the entire world. As shown herein, such press releases are published with the intention that newspapers and/or wire services will pick them up and disseminate the information even more widely than in the press release.

The foregoing facts meet all of the four criteria for supporting a claim for defamation, including on the basis that they allege more than one instance of damage. In addition, the false

accusations of infringement occurred not only through the press release, but also through cease and desist letters to customers.

These same basic facts support a claim for interference for prospective business advantage because the instant papers establish the existence of a business relationship, the defendants' interference with that relationship and the injury. Of course, the defendant Teslar has knowledge of the existence of distributorships that distribute Croton watches.

Lastly, under the Lanham Act, the aforementioned facts establish that Teslar made false and misleading representations concerning the characteristics and qualities of Croton's goods, suggesting that they are knock-off infringements. These misrepresentations were used in commerce, and in the context of commercial advertising and promotion. Certainly, the defendants' actions made the instant plaintiff not only believe, but actually experience damage that was caused by these misrepresentations.

For the foregoing reasons, the defendant Teslar's Motion to Dismiss Counts I, II and III should be summarily denied.

## STATEMENT OF FACTS

Croton sells watches under its CROTON trademark, which has been in use since 1878. Mermelstein Decl., ¶3. Croton company stocks approximately 2,000 styles of "CROTON" watches, and a few hundred or more watch styles under different brand names. Id. Some watches styles are designed in-house, while others are purchased from off-shore suppliers and labeled with the CROTON trademark or one of the other trademarks owned by Croton. Id. Approximately 1,500 watch styles are available on Croton's website at: www.crotonwatch.com. Mermelstein Decl., ¶4. The CROTON brand is advertised nationally, including at sports events and trade shows. Id.

The business of marketing and selling watches is extremely competitive and exceedingly dependent on reputation. Mermelstein Decl., ¶5. Teslar is a direct competitor of Croton. Mermelstein Decl., ¶6.

Defendant National Jewelers Magazine, Inc. ("National Jeweler") is a widely read and extremely influential publication in the industry. Mermelstein Decl., ¶7. National Jewelers is not read by attorneys, but rather by lay persons who read the text literally and draw lay person conclusions and inferences from the literal statements in the publication. *Id.* This lawsuit is predicated on an article (Exhibit A) published by National Jeweler which came to Croton's to attention as a result of several customers calling regarding the article and questioning as to whether Croton has been found by a judge to infringe a Teslar trademark. Mermelstein Decl., ¶8. Customers that read the article in National Jeweler Magazine mistakenly believed that the article truthfully reported on a trial or a judicial proceeding where U.S. District Judge Alan S. Gold found on the merits that Croton was guilty of selling a watch that infringed a Teslar trademark.

The prior case between Teslar and Croton was based on a dispute regarding two-dial watches. Mermelstein Decl., ¶9. Teslar sold a two-dial watch under its trademark "Philip Stein." Mermelstein Decl., ¶10. Sometime in 2004 or earlier, Croton began selling a two-dial watch, which it did not recognize as being similar to any other known watch, under its trademark CROTON. Mermelstein Decl., ¶11. Furthermore, Croton is not aware of even a single incident of customers confusing the Croton watch with the Philip Stein watch or vice versa. *Id.* There are similarities, but also many differences between the appearances of the watches. *Id.*

After receiving a cease and desist letter, Croton's attorneys responded on the merits, denying infringement for any definable proprietary rights in Teslar's Philip Stein Watch.

Mermelstein Decl., ¶12. In response, in July 2004, Teslar filed an action in the Federal District Court for the Southern District of Florida, naming Croton and ShopNBC.com as defendants. Mermelstein Decl., ¶13. That Florida action was pending as case no. 04-21898-CIV-GOLD-SIMONTON. *Id.* Croton filed an Answer and a counterclaim for tortious interference with business relations, based on Teslar's threatening Croton's customers. Mermelstein Decl., ¶14. Teslar filed a Motion for Preliminary Injunction, but no Preliminary Injunction was ever issued. Mermelstein Decl., ¶15. Although Croton and its co-defendant ShopNBC.com denied the allegations and filed counterclaims against Teslar, both Croton and ShopNBC.com realized that Croton's two-dial watch was a poor seller with only 116 pieces sold over many months and, therefore, strictly as a business decision, agreed with Teslar that the parties ought to settle their dispute. Mermelstein Decl., ¶16.

A settlement was reached before any proceedings on the merits. Mermelstein Decl., ¶17. The parties engaged in no discovery and no substantive motion practice and the Court never even had the opportunity to consider any of the claims of the parties on the merits. *Id.* The Court never rendered any findings of fact nor any conclusions of law. *Id.*

Although Teslar initially demanded monetary compensation and attorneys' fees, it dropped its demand for damages. Mermelstein Decl., ¶18. Further, Croton' counsel informed Teslar's counsel that the remaining stock has been disposed of prior to the submission of the Consent Judgment to the Court, which Croton and Teslar jointly requested the District Court judge to enter without any substantive consideration. *Id.* Judge Gold explicitly acknowledged that Croton and ShopNBC.com denied Teslar's accusation that the Croton watch that they were selling was an infringement of Teslar's tradedress. Mermelstein Decl., ¶19.

The Consent Judgment acknowledged that it was being entered on the consent of both the plaintiff and the defendant "to settle this controversy on the negotiated terms set forth below." *Id.* There was no "finding" nor any "ruling" by the Court, other than a recitation of the terms negotiated by the parties. *Id.* The Consent Judgment recites that it is being entered "in order to resolve this matter amicably and without any further costs and expense of litigation." Mermelstein Decl., ¶20. The Consent Judgment acknowledges that the parties each had claims against the other, which they mutually released. *Id.* The Consent Judgment signed by Judge Gold never made any finding on the merits, never rendered a legal decision that any watch product sold by Croton infringed any tradedress of Teslar and never awarded any remedies other than lending the force and the power of the Court (in the form of a Consent Judgment) to the defendant's agreement to stop selling the watch. Mermelstein Decl., ¶21.

Shortly after Judge Gold entered the Consent Judgment, the complained of article appeared in the National Jewelers Magazine and on its website. Mermelstein Decl., ¶22 and Amended Complaint, Exh. A.

## ARGUMENT

In response to Teslar's Motion to Dismiss, Croton has filed an Amended Complaint, with Exhibits A and B, that specifically addresses each alleged pleading deficiency that Teslar raises in its motion. While Croton utterly disagrees with Teslar that its claims fail to plead the necessary elements, for the sake of clarity, Croton has amended to clarify each alleged deficiency.

I.   **Croton Has Sufficiently Pled Its Claim For Defamation**

A claim for defamation requires (1) the defendant made a false and defamatory statement; (2) concerning plaintiff; (3) publication to a third party; (4) fault (either negligence [for private entities] or actual malice [for pubic figures] depending on the status of the plaintiff and (5) special damages or per se actionability. *See Celle v. Filipino Reporter Enter., Inc.*, 209 F.3d 163, 176 (2d Cir. 2000); *see also Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001). Croton has sufficiently pled each of these elements at this pleading stage.

The Teslar press release and the magazine article which it engineered contain numerous false statements. First, the article shows a picture of a watch, purportedly sold by Croton. Mermelstein Decl., ¶24 and Amended Complaint, Exh. A. The depicted watch is not the watch that was sold by Croton. *Id.* It is the Teslar watch. *Id.* The watch in the picture bears the trademark "Philip Stein." *Id.* The Consent Judgment explicitly acknowledges that Croton was selling watches under its own CROTON trademark. *Id.*

The caption of the article is "Philip Stein Teslar Wins Trademark Case." Mermelstein Decl., ¶25 and Amended Complaint, Exh. A. But the Florida action did not assert trademark infringement. *Id.* No trademark was infringed and the Consent Judgment explicitly states that no trademark rights were involved. *Id.*

The first paragraph of the article states that Philip Stein Teslar won a "trademark infringement case." Mermelstein Decl., ¶26 and Amended Complaint, Exh. A Again, the prior action was not for trademark infringement. *Id.*

The second paragraph of the article states that Judge Gold issued a permanent injunction, ordering Croton to stop selling "a watch that resembles the style of Philip Stein Teslar watches."

Mermelstein Decl., ¶27 and Amended Complaint, Exh. A. This is not so. *Id.* The injunction is against "Teslar's <u>tradedress</u> in the Philip Stein two-dial watches". *Id.*

The third paragraph states that the Judge "ruled" that the "Croton unisex stainless steel dual time zone watch," violated Philip Stein Teslar's tradedress protection of its two-dial design." Mermelstein Decl., ¶24 and Amended Complaint, Exh. A. Judge Gold made no such ruling. *Id.* The Judge never reached the merits of the case and never found any product of Croton to infringe or to violate any Teslar tradedress. *Id.*

The Exhibit A article contains numerous literally false statements as shown above. Teslar's arguments that the above statements are true are not supported by record. Nor is Teslar's argument that the publication should be viewed as a whole, since an ordinary reader would be deceived by the false statements and, in fact, several of Croton's customers have been deceived by the article. Mermelstein Decl., ¶8.

In addition, Teslar published these false statements with malice and an intent to harm Croton and Croton's business. Amended Complaint, ¶42 and Mermelstein Decl., ¶33. Finally, these statements are per se actionable because they impugn Croton's business reputation, integrity and creditworthiness by insinuating that Croton acts illegally and a law breaker. Amended Complaint, ¶34 and Mermelstein Decl., ¶33. Indeed, accusing a business of being a trademark infringer is incredibly damaging because customers refuse to purchase any products for fear of being liable themselves for infringement. Mermelstein Decl., ¶33. *See Celle v. Filipino Reporter Enter., Inc.*, 209 F.3d 163, 176 (2d Cir. 2000); *see also Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001).

Finally, Teslar's argument that the so called single instance rule applies likewise misses the mark. Teslar published its defamatory statements in numerous locations, including in

National Jewelers Magazine and on the National Jewelers' website (which necessarily has different distribution than the printed magazine). Amended Complaint, ¶16 and Mermelstein Decl., ¶24. In addition, even Teslar cases note that the single instance exception applies only where the single instance is "confined to denigrating the quality of goods or services rather than the basic integrity of a business or its creditworthiness." *RMS Tech., Inc. v. NYNEX Computer Servs. Co.*, 1993 N.Y. Misc. LEXIS 616, *8 (1st Dept. 1993). Indeed, in the RMS Tech. Case relied on by Teslar, the court expressly rejected the single use exception because:

> the asserted language concerns RMS's performance of the required work, but may reasonably be interpreted to suggest that RMS's ability and skill are lacking and its quality of work is generally incompetent. There is even a suggestion that RMS's sales policy misleads its customers. The statements go beyond complaints about a service or product. The statements suggest a general perception of RMS and cannot reasonably be included within the ambit of the single instance exception as a matter of law.

Id. at *8 (citations omitted). As with RMS, by stating that Croton is a trademark infringer not only disparages Croton's product, but also disparages Croton's integrity by insinuating that Croton acts illegally and is a law breaker and may expose its customers to liability. Mermelstein Decl., ¶33.

## II.   Croton Has Sufficiently Pled Is Claim For Tortious Interference

A claim for tortious interference requires that a plaintiff plead (1) the existence of a business relationship with a third party; (2) a defendant's interference with such a relationship; (3) the that defendant, having knowledge of such relationship, intentionally interfered with it; and (4) injury to the business relationship. *See Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 205 (2d Cir. 1998); *Purgess v. Sharrock, et al.*, 33 F.3d 134, 141 (2d Cir. 1994). Here, Croton has more than sufficiently pled each of these elements to sustain its claim at this initial pleadings

stage. Croton has pled that it maintained a business relationship with, inter alia, Exclusive Distributors, Inc. and Watch West. Amended Compliant, ¶¶37 and 48, Mermelstein Decl, ¶¶34 and 35. That Teslar interfered with those relationships by publishing the press release. Amended Compliant, ¶42, Mermelstein Decl, ¶29. That Teslar had knowledge of Croton's distributors and customers and intentionally interfered with those relationships to frighten away Croton's distributors and customers. Amended Compliant, ¶¶42 and 47, Mermelstein Decl, ¶¶29 and 33. Finally, Teslar's above complained of acts have injured Croton in the form of lost sales. Amended Compliant, ¶¶35-38, Mermelstein Decl, ¶¶33-35.

Croton has fully pled its claim for tortious interference.

### III. Croton Has Sufficiently Pled Is Claim For False Advertising And Unfair Competition

Likewise, Croton has fully pled its claim for false advertising and unfair competition under the Lanham Act. Section 1125 (a) of Title 15, codified as § 43(a) of the Lanham Act, provides, in relevant part:

> **Any person who . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact**, which in commercial advertising or promotion, **misrepresents the nature, characteristics, qualities, or geographic origin of . . . another person's goods, services, or commercial activities**, shall be liable in a civil action.

15 U.S.C. § 1125(a)(1)(B) (emphasis added); *see Societe des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*, 380 F.3d 126, 132 (2d Cir. 2004) (Noting that the "Act expressly forbids false or misleading descriptions or representations of fact concerning ... the nature, characteristics, qualities ...[of] another person's goods, services, or commercial activities.").

Section 43(a) "does not apply merely to false advertising traditional media channels, but to a broad range of deceptive statements made in connection with the sale of goods or services." *Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68, 74 (S.D.N.Y. 1988). Indeed, courts have held that Section 43(a) is designed to encompass both literally false and descriptions and representations and implied falsehoods to protect against the type "sophisticated deception" that can be perpetrated though "clever use of innuendo, indirect intimations, and ambiguous suggestions." *American Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir. 1978).

"To make out a claim under § 43(a) of the Lanham Act, a plaintiff must show that the defendant: (1) made material misrepresentations about the nature or characteristics of ... plaintiff's goods or services; (2) used the false or misleading misrepresentations 'in commerce;' (3) made the representations in the context of commercial advertising or commercial promotion; and (4) made plaintiff believe that it is likely to be damaged by the representations." *World Wrestling Fed'n Entertainment, Inc. v. Bozell*, 142 F.Supp.2d 514, 530 (S.D.N.Y. 2001); *Verizon Directories*, 309 F.Supp.2d at 404.

Croton has fully pled each of these elements. First, Teslar has made material misrepresentations about the nature or characteristics of Croton's goods by asserting that Croton's goods have been adjudged guilty of trademark infringement. Amended Compliant, ¶34 and 56, Mermelstein Decl, ¶33. These statements are false and have been used in advertising by Teslar who has issued a press release for advertising purposes and even includes advertisements of its products. Amended Compliant, ¶35 and 57, Mermelstein Decl, ¶32. Teslar made these misrepresentation in the contest of the "press release." Amended Compliant, ¶¶16-

30 Mermelstein Decl, ¶¶23-29. Croton has been damaged by these false and misleading statements. Amended Compliant, ¶¶35-38 and 60-61, Mermelstein Decl, ¶33-35.

## CONCLUSION

For the foregoing reasons, Teslar's Motion to Dismiss should be denied in its entirety and for such other and further relief as this court deems just and proper.

Dated: New York, New York
      March 10, 2006

Respectfully submitted,

By: _____
Max Moskowitz (MM 5866)
Douglas Q. Hahn (DH 3032)
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York 10036
Telephone: (212) 382-0700
Facsimile: (212) 382-0888

Attorneys for Plaintiff Croton Watch Co., Inc.

{00756226.2}                           12