UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CROTON WATCH CO., INC.,<br><br>      Plaintiff,<br><br>v.<br><br>NATIONAL JEWELER MAGAZINE, INC.<br>and TESLAR INSIDE CORPORATION.<br><br>      Defendants. | Civil Action No.:<br>06 CV 662 (GD) |

### DECLARATION OF DAVID MERMELSTEIN

I, David Mermelstein, declare:

1. I am president of Croton Watch Co., Inc. ("Croton"), the plaintiff in this action, and submit this Declaration in Opposition to a Motion by the defendant Teslar Inside Corporation ("Teslar") to dismiss this action.

2. I make this Declaration based upon my own personal knowledge of the facts set forth herein.

3. Croton sells watches under its CROTON trademark, which has been in use since 1878. Croton company stocks approximately 2,000 styles of "CROTON" watches, and a few hundred or more watch styles under different brand names. Some watches styles are designed in-house, while others are purchased from off-shore suppliers and labeled with the CROTON trademark or one of the other trademarks owned by Croton.

1

{00750028.2}

4. Approximately 1,500 watch styles are available on Croton's website at: www.crotonwatch.com. The CROTON brand is advertised nationally, including at sports events and trade shows.

5. The business of marketing and selling watches is extremely competitive and exceedingly dependent on reputation.

6. Teslar is a direct competitor of Croton.

7. Defendant National Jewelers Magazine, Inc. ("National Jeweler") is a widely read and extremely influential publication in our industry. National Jewelers is not read by attorneys, but rather by lay persons who read the text literally and draw lay person conclusions and inferences from the literal statements in the publication.

8. This lawsuit is predicated on an article (**Exhibit A**) published by National Jeweler which came to my to attention as a result of several customers calling me about the article and questioning me as to whether my company has been found by a judge to infringe a Teslar trademark. Customers that read the article in National Jeweler Magazine mistakenly believed that the article truthfully reported on a trial or a judicial proceeding where U.S. District Judge Alan S. Gold found on the merits that Croton was guilty of selling a watch that infringed a Teslar trademark. Nothing could be further from the truth.

9. The case between Teslar and Croton was based on a dispute regarding two-dial watches.

10. Teslar sold a two-dial watch under its trademark "Philip Stein" and which I will refer as the "Philip Stein two-dial watch."

2

{00750028.2}

11. Sometime in 2004 or earlier, Croton began selling a two-dial watch, which it did not recognize as being similar to any other known watch, under its trademark CROTON. To my knowledge, the CROTON trademark is far more famous and recognizable that the "Philip Stein" trademark. Furthermore, I am not aware of even a single incident of customers confusing the Croton watch with the Philip Stein watch or vice versa. There are similarities, but also many differences between the appearances of the watches.

12. After receiving a cease and desist letter, my attorneys responded on the merits, denying infringement for any definable proprietary rights in Teslar's Philip Stein Watch.

13. In response, in July 2004, Teslar filed an action in the Federal District Court for the Southern District of Florida, naming Croton and ShopNBC.com as defendants. That Florida action was pending as case no. 04-21898-CIV-GOLD-SIMONTON.

14. Croton filed an Answer and a counterclaim for tortious interference with business relations, based on Teslar's threatening Croton's customers.

15. Teslar filed a Motion for Preliminary Injunction, but no Preliminary Injunction was ever issued.

16. Although Croton and its co-defendant ShopNBC.com denied the allegations and filed counterclaims against Teslar, both Croton and ShopNBC.com realized that Croton's two-dial watch was a poor seller with only 116 pieces sold over many months and, therefore, strictly as a business decision, agreed with Teslar that the parties ought to settle their dispute.

17. A settlement was reached before any proceedings on the merits. The parties engaged in no discovery and no motion practice and the Court never even had the opportunity to

{00750028.2}

consider any of the claims of the parties on the merits. The Court never rendered any findings of fact nor any conclusions of law.

18. Although Teslar initially demanded monetary compensation and attorneys' fees, it dropped its demand for damages. Further, our counsel informed Teslar's counsel that the remaining stock has been disposed of prior to the submission of the Consent Judgment to the Court, which Croton and Teslar jointly requested the District Court judge to enter without any substantive consideration.

19. Judge Gold explicitly acknowledged that Croton and ShopNBC.com denied Teslar's accusation that the Croton watch that they were selling was an infringement of Teslar's tradedress. The Consent Judgment acknowledged that it was being entered <u>on the consent</u> of both the plaintiff and the defendant "to settle this controversy on the negotiated terms set forth below." There was no "finding" nor any "ruling" by the Court, other than a recitation of the terms negotiated by the parties.

20. The Consent Judgment recites that it is being entered "in order to resolve this matter amicably and without any further costs and expense of litigation." The Consent Judgment acknowledges that the parties each had claims against the other, which they mutually released.

21. The Consent Judgment signed by Judge Gold never made any finding on the merits, never rendered a legal decision that any watch product sold by Croton infringed any tradedress of Teslar and never awarded any remedies other than lending the force and the power of the Court (in the form of a Consent Judgment) to the defendant's agreement to stop selling the watch.

22. Shortly after Judge Gold entered the Consent Judgment, the complained of article appeared in the National Jewelers Magazine and on its website.

23. I have reviewed Teslar's motion papers, and categorically disagree with their statements, that "all of the statements published by National are substantially true..." (page 3 of Teslar's Memorandum of Law).

24. There are numerous inaccuracies in the article. First, it shows a picture of a watch, purportedly sold by Croton. See **Exhibit A**. The depicted watch is not the watch that was sold by Croton. It is the Teslar watch. The watch in the picture bears the trademark "Philip Stein." The Consent Judgment explicitly acknowledges that Croton was selling watches under its own CROTON trademark.

25. The caption of the article is "Philip Stein Teslar Wins Trademark Case." But the Florida action did not assert trademark infringement. No trademark was infringed and the Consent Judgment explicitly states that no trademark rights were involved.

26. The first paragraph of the article states that Philip Stein Teslar won a "trademark infringement case." Again, the prior action was not for trademark infringement.

27. The second paragraph of the article states that Judge Gold issued a permanent injunction, ordering Croton to stop selling "a watch that resembles the style of Philip Stein Teslar watches." This is not so. The injunction is against "Teslar's tradedress in the Philip Stein two-dial watches".

28. The third paragraph states that the Judge "ruled" that the "Croton unisex stainless steel dual time zone watch," violated Philip Stein Teslar's tradedress protection of its two-dial

5

{00750028.2}

design." Judge Gold made no such ruling. The Judge never reached the merits of the case and never found any product of Croton to infringe or to violate any Teslar tradedress.

29. The article contained literally false statements and, in an overall sense, even the few literally true statements were designed to deceive people who are not familiar with the actual nature of Judge Gold's involvement with this lawsuit, as to the true nature of the Judgment to interfere with Croton's relationships with its customers.

30. Upon hearing about this article from customers, we contacted our attorneys and they, in turn, contacted National Jeweler Magazine.

31. Upon becoming aware of the true nature of the Consent Judgement in the Florida action, National Jeweler Magazine immediately offered to print a retraction. Its counsel represented to our counsel that their reporter "fell for the spin" of the defendant Teslar. See **Exhibit B**.

32. More recently, our counsel learned that National Jeweler Magazine prepared this article based on a press release issued by Teslar. In other words, the National Jeweler Magazine article is based on a press release by Teslar which interpreted the press release as describing a victory for Teslar in the litigation, by the court finding in favor of Teslar and against Croton on the disputed issues. In my business, companies issue press releases with the specific intent that they will be picked up by the print media and news wires and be widely disseminated, both nationally and internationally. Thus, press releases such as this are commercial in nature.

33. Teslar made these statements with knowledge of Croton's customers and distributors for the purpose of intentionally and maliciously harming Croton's business and business relationships. These statements by defendants are particularly harmful because they

damage Croton's business reputation and creditworthiness by accusing Croton of being a trademark infringer for the purpose of scaring Croton's customers, who are fearful that they will also be liable for Croton's alleged acts of trademark infringement. With respect to at least two customers, who are distributors of Croton watches, we have seen the sales of Croton watches decline, owing to the loss of distributors' interest in promoting Croton watches following publication of the mentioned article.

34. For example, the owner of Exclusive Distributors, Inc., located in Brooklyn, New York, Alexander Berger, called me at the time the article appeared and questioned me about its content. Thereafter, I have seen the business in Croton watches through that distributor go down.

35. Similarly, Rick Zerah, of our distributor Watch West, located in California, called me about the contents of the article and thereafter, our business with that distributorship has decreased substantially. There were other similar cases as well.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 3/10/06

DAVID MERMELSTEIN

7

{00750028.2}