Max Moskowitz (MM 5866)
Douglas Q. Hahn (DH 3032)
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 382-0700
Facsimile:  (212) 382-0888

Attorney for Plaintiff Croton Watch Co., Inc.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CROTON WATCH CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL JEWELER MAGAZINE, INC. and TESLAR INSIDE CORPORATION. <br><br> Defendants. | Civil Action No.: <br> 06 CV 662 (GD) <br><br> **AMENDED COMPLAINT** |

Plaintiff, Croton Watch Co., Inc. (hereinafter "Plaintiff" or "Croton"), by and through its undersigned attorneys, as and for its Complaint against defendants National Jeweler Magazine ("National Jeweler") and Teslar Inside Corporation ("Teslar") (collectively National Jeweler and Teslar are "Defendants"), alleges as follows:

### THE PARTIES

1. Plaintiff Croton is a New Jersey corporation, with its principal place of business located at 195 Anderson Ave., Moonachie, New Jersey, 07074.

2. Defendant National Jeweler is owned by VNU Business Publications, USA, Inc., with offices at 770 Broadway, New York, New York 10003. VNU Business Publications, USA, Inc. is a subsidiary of VNU, Inc., which is located at the same address.

3. Defendant Teslar Inside Corporation is a Florida corporation and is located at 169 East Flagler St., Suite 1701, Miami, Florida 33131.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over defendants pursuant to CPLR 301 and 302 by reason of the fact that they reside in this District, transact business in the State of New York and in this District and because they have committed tortious acts within and without the State of New York and in this District having an injurious effect on plaintiff in New York.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1338 and 15 U.S.C. §1121. This Court also has supplemental jurisdiction over the claims for relief herein which arise under New York statutory and/or common law pursuant to 28 U.S.C. §1367(a), since these claims are so related to the federal statutory claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), and §1400 because defendants reside in and/or conduct business in this judicial District, and a substantial part of the events giving rise to the claims occurred in this District.

## FACTS COMMON TO ALL COUNTS

**Plaintiff Croton**

7.  The CROTON trademark for watches has been in use since 1878 and was acquired by the current President of Croton, David Mermelstein, in 1991.

8.  Croton stocks, and has available for sale, approximately two thousand styles of "CROTON" watches. The business markets a few hundred other watch styles under different brand names.

9.  Approximately 1,500 watch styles can be obtained on the website of Croton at: www.crotonwatch.com. The CROTON brand is advertised at sports events and at trade shows.

**Defendant National Jeweler**

10. According to their website at www.nationaljeweler.com, "National Jeweler is the world's most important jewelry resource - the publication of record. National Jeweler presents up-to-the-minute news to its readers in every issue twice a month. With the magazine's first four editorial pages devoted to the latest breaking news, and followed by news pages keyed to specific markets, readers can quickly find the information they need on the latest happenings in the marketplace. National Jeweler also keeps up with the latest trends in fashion with its color fashion folios and other fashion coverage."

11. The same website states that "Nationaljeweler.com is a VNU Business Publications, USA, Inc. and VNU eMedia production." It elaborates that "VNU Business Publications, USA, Inc. penetrates and enlightens the jewelry industry with print, face-to-face, and online information. VNU eMedia enables VNU Business Publications, USA, Inc. to publish in the fast-paced online market."

**Defendant Teslar**

12.  Teslar, like plaintiff Croton, is a watch designer and manufacturer. Teslar owns the registered trademark, "Philip Stein," relating to a particular watch design.

13.  In July 2004, Teslar filed an action in the Federal District Court for the Southern District of Florida against Croton and ShopNBC.com, alleging that Croton infringed Teslar's trademark rights.

14.  Croton and ShopNBC.com denied the allegations and filed counterclaims against Teslar. In December 2004, before proceeding on the merits, the parties amicably agreed to a settlement agreement under which no party admitted fault. There was no discovery, nor did the court make <u>any</u> findings of law or fact.

15.  To effectuate and bind the parties to the settlement, Croton and Teslar jointly requested that the district court judge sign a formal consent judgement detailing the specific terms previously agreed upon <u>by the parties</u>. The final judgement was thereby entered into public record and the case was closed.

**Defendants' False and Defamatory Statements About Plaintiff**

16.  Upon information and belief, representatives of defendant Teslar and defendant National Jeweler discussed the terms of the settlement agreement. Following that discussion, an article entitled "Philip Stein Teslar wins trademark case" appeared in the March 1, 2005 edition of the National Jeweler Magazine and on the nationaljeweler.com website. A copy of the article is annexed hereto as Exh. A.

17.  Upon information and belief, Defendant Teslar knowingly made false and defamatory statements about Plaintiff Croton to National Jeweler, including statements about

Teslar's supposed victory against Croton in court and that the judge found Croton's watch to infringe on Teslar's trademark.

18. National Jeweler did not check the publicly available court records, nor did it contact Croton to verify Teslar's statements. It published an article about the lawsuit based on Teslar's (biased) word only, and without any regard for the truth.

19. The article's description of the lawsuit is entirely false and misleading. Beginning with the title, and straight through to the very end, the article purportedly describes Teslar's victory in official court proceedings as well as the judge's findings of fact and law. The judge made no such findings. The final consent judgement was based entirely on a joint settlement agreement – neither party won the suit.

20. Particularly, the article's title states "Philip Stein Teslar wins trademark case" but in fact, there was no winner in the suit.

21. The third paragraph states "[t]he judge ruled that the [Croton watch] violated Philip Stein Teslar's trade dress protection." The judge made no such ruling.

22. The article also included a picture of Croton's allegedly infringing watch (the caption specifically states it is the Croton watch), yet the picture is actually one of a Teslar watch, and not one sold by Croton.

23. In its entirety, the National Jeweler article describes Teslar's victory in court, claims to cite "court papers," and explains why the Croton watch infringed Teslar's trademark – even though the court never made any finding of infringement.

24. The article made completely and utterly false statements with regard to the events of the lawsuit, and made defamatory statements about Croton and Croton's products.

25. Upon information and belief, Defendant Teslar made these false and defamatory statements to Defendant National Jeweler to bolster the reputation and standing of Philip Stein Teslar and with an intent to harm competitor Croton's business reputation.

26. Upon information and belief, Defendant National Jeweler published this article, knowing that it contained false and defamatory statements, in expectation of future advertising revenue from Teslar in return for the favorable coverage Teslar received in its publication.

27. National Jeweler was grossly negligent in its reckless disregard for the truth by publishing the article based wholly on its discussion with a Teslar representative. Furthermore, it essentially aided and abetted Teslar's defamatory statements, and published them to the entire jewelry and watch industry.

28. After National Jeweler was contacted by Croton's counsel and informed of the false and defamatory aspects of the article, the National Jeweler representative defended its lack of responsible journalism and reckless disregard for the truth, stating that the article's journalist merely "fell for Teslar's spin" of the lawsuit. In fact, National Jewelers offered to print a correction. See Exh. B.

29. National Jeweler has since taken no steps to correct the article or make any attempt to undo the damage done to Croton's reputation.

30. The same article is still published on the www.nationaljeweler.com website, and continues daily to harm Croton's reputation. In fact, a search on Google.com for "teslar croton" will list that article on www.nationaljeweler.com as the number one search result.

31. Being that National Jeweler is, as it maintains, "the world's most important jewelry resource," the damage caused by this article is enormous. The false and defamatory

statements made by Teslar and published by National Jeweler have severely damaged plaintiff's reputation and standing throughout the watch and jewelry business.

32. Based on the false information in the article that Croton watches were found to be infringing on Teslar's trademark, potential retailers of Croton's watches are now hesitant to sell Croton watches for fear of being targeted like ShopNBC.com was, in similar lawsuits against Croton.

33. In addition, Croton's competitors, in reading the National Jeweler article, were led to believe that Croton has weak trademark protection and presents a ripe target for litigation, subjecting Croton to expensive legal costs.

34. Most importantly, Croton's reputation and standing as a respected leader in the watch and jewelry business was severely damaged by the National Jeweler article, which portrayed Croton as a manufacturer of "knock offs," which damages Croton's business reputation, integrity and creditworthiness by insinuating that Croton acts illegally. Croton's customers will be reluctant to purchase the same large quantities of watches, at the same price premium, that they did before the article was published.

**Croton's Reputation Was Damaged And It Lost Business**

35. More recently, our counsel learned that National Jeweler Magazine prepared this article based on a press release issued by Teslar. In other words, the National Jeweler Magazine article is based on a press release by Teslar which interpreted the press release as describing a victory for Teslar in the litigation, by the court finding in favor of Teslar and against Croton on the disputed issues. In my business, companies issue press releases with the specific intent that they will be picked up by the print media and news wires and be widely disseminated, both nationally and internationally. Thus, the press release is commercial in nature.

36. With respect to at least two customers, who are distributors of Croton watches, we have seen the sales of Croton watches decline, owing to the loss of distributors' interest in promoting Croton watches following publication of the mentioned article.

37. For example, the owner of Exclusive Enterprises, Inc., located in Brooklyn, New York, Alexander Berger, called me at the time the article appeared and questioned me about its content. Thereafter, I have seen the business in Croton watches through that distributor go down. Similarly, Rick Zerah, of our distributor Watch West, located in California, called me about the contents of the article and thereafter, our business with that distributorship has decreased substantially. There were other similar cases as well.

38. Each term, statement and provision of the Consent Judgment that was entered in a prior litigation between Teslar and Croton was prepared by counsel for the parties and Judge Gold did no more than "So Order" it. Moreover, counsel for Teslar was informed by me that there were no watches left to destroy, but insisted that a provision for destroying merchandise be included. It appears to me that from the start, Teslar planned to utilize the Consent Judgment for advertisement and commercial purposes, including for the purpose of deceiving the public as to the nature and significance of the results in the prior litigation.

**FIRST CLAIM FOR RELIEF**
(*Per se Defamation*)

39. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. Both Defendants made false statements impugning the integrity and reputation of Croton, as described herein, which statements constitute per se defamation under the common law of the State of New York.

41. Defendant Teslar made false and defamatory statements about plaintiff with the knowledge and expectation that those statements would be published and distributed throughout the jewelry and watch industry.

42. Defendant Teslar committed the aforesaid acts maliciously and intentionally to harm Plaintiff and Plaintiff's business and to deter Plaintiff's suppliers and customers from doing business with Plaintiff to interfere with Croton's relationship with its customers and distributors.

43. Defendant National Jeweler, published those statements either knowing they were false and defamatory, or with reckless disregard for the truth. The jewelry industry publication was intended (and expected) to be seen by to Plaintiff's customers, competitors and to other third parties.

44. By reason of the foregoing, Plaintiff has suffered and continues to suffer severe irreparable harm for which there is no adequate remedy at law.

45. By reason of the foregoing, Plaintiff is entitled to an award of damages from defendants in an amount to be determined at trial but in no event less than $1,000,000.00.

## SECOND CLAIM FOR RELIEF
*(Tortious Interference with Prospective Economic Advantage)*

46. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. Having done business under the Croton name for many years, Plaintiff has developed and maintains valuable business relationships with suppliers, customers and potential customers. Defendants used their knowledge of Croton's customers and distributors to intentionally and maliciously interfered with those relationships to harm Croton.

48. Defendants' activities have falsely informed Plaintiff's distributors and customers, including but not limited to Exclusive Enterprises, Inc. and Watches West, as well as potential customers and competitors that Plaintiff has suffered legal difficulties and has cast doubt on Plaintiff's integrity and reputation in the watch and jewelry business. Such statements are false and either known by Defendants to be false when made or made with a reckless disregard for the truth or falsity thereof.

49. In making these false statements, Defendants intended to harm and have in fact harmed plaintiff's business reputation and caused plaintiff to lose good will.

50. Defendants' conduct has impaired and continues to impair Plaintiff's relationships with customers and competitors and has damaged Plaintiff's ability to do business.

51. Plaintiff has lost valuable business opportunities as a direct and proximate result of Defendants' acts.

52. By reason of the foregoing, Plaintiff has suffered and continues to suffer severe irreparable harm for which there is no adequate remedy at law.

53. By reason of the foregoing, Plaintiff is entitled to an award of damages from defendants in an amount to be determined at trial but in no event less than $1,000,000.00.

## THIRD CLAIM FOR RELIEF
*(False Advertising and Unfair Competition – 15 U.S.C. §1125(a))*

54. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55. This is a claim against Defendants, jointly and/or individually, false advertising and unfair competition arising under Section 43 of the Lanham Act, 15 U.S.C. §1125(a).

56. Defendant National Jeweler made false, misleading and disparaging statements, in writing, to a broad audience of readers, including Plaintiff's customers, potential customers and competitors which falsely disparage Plaintiff's business, integrity and reputation.

57. The article itself was extremely commercial in nature. All information was provided by Teslar. There was no journalistic aspect to the article, considering the false information could have been easily discovered by inspecting public court records or contacting Croton or Croton's counsel for their comments. National Jeweler gave the "free press" to Teslar in hopes of obtaining a more permanent advertising arrangement.

58. The article was in fact an advertisement masquerading as a news story, promoting Teslar's reputation while disparaging that of Croton's. The events were reported <u>exactly</u> as stated by Teslar, intended to <u>promote</u> the Teslar products and to disparage the products and reputation of its competitor, Croton.

59. By appearing as a news article and not revealing itself as the advertisement it actually was, the article is far more damaging to Croton, because readers will more readily believe the content and assume it was verified by the publisher. Readers would be more skeptical if they knew the content was dictated by Teslar (as is the case in typical advertisements).

60. By reason of the foregoing acts, Defendants have engaged and are engaging in malicious, willful and deliberate false advertising and unfair competition in violation of the Lanham Act.

61. By reason of the foregoing, Plaintiff has been damaged by the Defendants in an amount to be determined at trial but in no event less than $1,000,000.00, plus pre-judgment interest from the commencement of Defendants' unfair competitive acts.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

    A.    Requiring Defendants to pay to Plaintiff such damages as Plaintiff has sustained as a consequence of Defendants' Defamation, Tortious Interference with Prospective Economic Advantage, and False Advertising and Unfair Competition;

    B.    Ordering that Plaintiff recover the costs of this action together with reasonable attorneys' and investigators' fees and prejudgment interest;

    C.    Awarding Plaintiff damages in an amount to be determined at trial but in no event less than $3,000,000 together with the costs and disbursements which Plaintiff has incurred in connection with this action and Plaintiff's reasonable attorneys fees;

    D.    Granting Plaintiff such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       March 10, 2006

OSTROLENK, FABER, GERB & SOFFEN, LLP

By: _____
    Max Moskowitz (MM 5866)
    Douglas Q. Hahn (DH 3032)
1180 Avenue of the Americas
New York, New York 10036
Telephone: (212) 382-0700
Facsimile: (212) 382-0888

Attorneys for Plaintiff Croton Watch Co., Inc.

{00756239.1}                         12

# EXHIBIT A

Philip Stein Teslar wins trademark case
Barbara Green
*National Jeweler;* Mar 1, 2005; 99, 5; ABI/INFORM Trade & Industry
pg. 20

markets    diamond    fashion    **watch**    gemstone

BY BARBARA GREEN



A Vacheron Constantin King Fouad pocket watch from 1929.

## briefly noted

### TAG Heuer, Tiger Woods create golf-friendly watch

**GENEVA**—After a year of collaboration with Tiger Woods, TAG Heuer has unveiled its Professional Golf Watch, which is priced at $1,195 and will be available in April in a limited supply of 4,000.

Woods, a brand ambassador for TAG Heuer, calls the timepiece "the only watch that I can wear on my wrist without adversely affecting my golf swing."

As a conventional clasp and folding buckle and the standard location of a crown at 3 o'clock can hurt a player's wrist and interfere during a game of golf, TAG Heuer developed a patented system that integrated the clasp into the watch head and relocated the crown to 9 o'clock.

An ultra-flexible, elastic silicon strap eliminates sliding and minimizes shock to the wrist. As the watch is crafted from ultra-light titanium, stainless steel and silicon, it is 60 percent lighter than other TAG Heuer steel watches.

"Golfers have very specific reasons for not wearing a watch during play—the added weight on the wrist, the strap being too loose or too tight, not to mention the intense demands the game puts upon the wrist," Woods said in a statement. "Working systematically through these and other obstacles with TAG Heuer's amazing team of watchmakers, engineers and designers, we were able to address all of these concerns and overcome them."

A portion of the watch's sales will be donated to the Tiger Woods Foundation, a non-profit organization dedicated to helping America's youth achieve their dreams.



Tiger Woods (right), shown with TAG Heuer North America president and CEO Daniel LaLonde, helped the company create a golf-friendly watch.

## Vacheron Constantin toasts 250 years, turns focus on U.S.

**GENEVA**—Luxury watch brand Vacheron Constantin celebrates its 250th anniversary this year with a new boutique, a new advertising campaign, a specially commissioned collection of fine watches and an exclusive April 3 auction in Geneva.

Effective April 1, the brand will also have a new U.S. president: Julien Tornare. Presently serving as vice president for business development at Vacheron, Tornare came to the United States last fall after working for the brand's Geneva division for about six years. He will focus on developing the U.S. market, which is currently second in brand sales to Asia; working with retailers to develop market-appropriate sales and marketing strategies; and slightly expanding distribution.

"The potential in the U.S. is huge. People are very, very interested in and keen on luxury goods here," he says. "They like the history of the brand, they like the very technical and complicated watches, like the ones we have, and I'm convinced we can develop the brand very, very much."

### A spring marketing campaign

This spring, Vacheron will launch a new consumer advertising campaign in publications including *Robb Report*, *Vanity Fair* and *The Wall Street Journal*. Ads will focus on the brand's history, longevity and exclusivity.

"I think the history element is so important because when you think of the world 250 years ago, the Declaration of Independence was not even written, but these guys were already making and selling watches under the name Vacheron Constantin," he says. "We will work with only a select few publications, and focus on positioning and visibility."

Vacheron will also unveil five new anniversary collections. A piece from each will be included in the April 3 auction in Geneva, run by the auction house Antiquorum. Some of the anniversary collections will be very limited and complicated, like the one-of-a-kind creation designed exclusively for the auction. Other collections, while still limited, will be more widely available.

"We will produce a collection in a larger quantity, that will be open to our retailers and priced at $25,000 to $30,000," Tornare says. "Limited editions are always so successful, even though that does add a bit of frustration for sales associates. Each piece will be marked with a special anniversary identification."

To drive interest, the full collection of watches to be auctioned were displayed at the Tourneau TimeMachine in New York at the end of February.

While Tornare says Vacheron is open to increasing its distribution slightly from about 60 U.S. stores to perhaps 65, the company believes it is crucial that distribution stay as limited and exclusive as the watches themselves.

"We have a very limited network compared to other brands, and we prefer to have a smaller number of accounts but work on partnership with our retailers and make sure we can deliver well to them rather than spreading ourselves too thin," says Tornare.

Founded in Geneva in 1755 by Jean-Marc Vacheron, Vacheron Constantin is the oldest continuous Swiss watchmaker and a member of the Richemont Group. The brand, known for its understated style, was introduced to the United States in 1833. Prices range from $6,600 for basic luxury watches to more than $5 million for jeweled pieces.

Popular with royalty, Queen Elizabeth II received a Vacheron Constantin at her coronation some 50 years ago. Princess Diana received hers on the occasion of her engagement to Prince Charles. The brand's intricate minute repeater watch—which chimes the time in hours, quarter hours and minutes and is priced at $340,000 in yellow gold—was originally commissioned by French Emperor Napoleon Bonaparte.

www.vacheron-constantin.com

## Selling tips:

■ Focus on the exclusivity of the watch, both in terms of production and distribution.

■ Take advantage of the brand's consumer advertising campaign and 250th anniversary celebrations through your own localized marketing and advertising efforts and in-store displays.

## MOVING PARTS

From copyright cases to new boutiques, the watch industry has seen its share of headlines recently. Here is a roundup of some of the top stories.

### Philip Stein Teslar wins trademark case

Philip Stein Teslar has won a trademark infringement case against a manufacturer and a home shopping network, the company has announced.

U.S. District Court Judge Alan S. Gold issued a permanent injunction in New York's federal court in mid-December, ordering Croton Watch Co. to stop producing, and both it and ShopNBC to stop selling a watch that resembles the style of Philip Stein Teslar watches.

*The Croton Unisex Stainless Steel Dual Time Zone Watch by Philip Stein Teslar.*

The judge ruled that the "Croton Unisex Stainless Steel Dual Time Zone Watch," of which ShopNBC sold 116 pieces, violated Philip Stein Teslar's trade dress protection of its two-dial design. The watch did not contain the "Teslar technology" Philip Stein Teslar claims helps the body reinforce its own electromagnetic field against potential negative effects of low-energy electromagnetic pollution, court papers said.

Croton and ShopNBC agreed to cease sales of the watch, which was introduced in July. The judgment ordered both parties to destroy their current and in-process inventories of the timepiece.

### Omega snags 90210 zip code for first American boutique

Swatch Group brand Omega plans to launch its first boutique in the United States on tony Rodeo Drive in Beverly Hills, Calif. The 2800-square-foot, split-level store is slated to open in summer 2005.

The 150-year-old brand, whose ambassadors include Cindy Crawford, Anna Kournikova and recent swimming Olympian Michael Phelps, will feature a selection of museum pieces, its current collection and a new jewelry collection, Bijoux.

"There are several addresses in the U.S. that say prestige, but perhaps none have the cachet of Rodeo Drive," says Robert Emmons, president of Omega US. "That is why Omega chose to open its first retail boutique here."

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

# EXHIBIT B

-----Original Message-----
**From:** Eric Rubenstein [mailto:erubenstein@vnuinc.com]
**Sent:** Friday, April 22, 2005 12:28 PM
**To:** Max Moskowitz; Cheryl Godfrey
**Cc:** PRipperger@nationaljeweler.com; WSielaff@nationaljeweler.com
**Subject:** RE: National Jeweler letter

Mr. Moskowitz:

I received your April 8th letter to the National Jewler "Legal Department" only today . In the future, please correspond directly with me to expedite communication. As I told you, we are more than willing to correct the item that your client objects to. Please send to me the text of how you would like the correction to read, and we will review. Once we agree on how it should read, we will include the correction in the next available issue of National Jeweler.

Best regards,


Eric Rubenstein
Assistant General Counsel
VNU, Inc.
770 Broadway, 8th Floor
New York, New York   10003
Tel: (646) 654-5042
Fax: (646) 654-8006
email: erubenstein@vnuinc.com

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing **AMENDED COMPLAINT** was served by First-Class Mail, postage prepaid, upon the attorney for Defendants, this 10th day of March, 2006, addressed as follows:

Daniel S. Newman<br>
Broad & Cassel<br>
One Biscayne Tower, 21st Floor<br>
2 South Biscayne Blvd. Miami, FL 33131

_____
Douglas Q. Hahn

{00756419.1}