UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CROTON WATCH CO, INC.,            <u>MEMORANDUM DECISION</u>
                                                      <u>AND ORDER</u>
                         Plaintiff,                      06 CV 662 (GBD)

        -against-

NATIONAL JEWELER MAGAZINE, INC.
and TESLAR INSIDE CORPORATION,

                         Defendants.
------------------------------------------------------------------x
GEORGE B. DANIELS, District Judge:

       Plaintiff, Croton Watch Co., Inc. ("Croton") commenced this action against defendants, Teslar Inside Corporation ("Teslar") and National Jeweler Magazine, Inc. ("National")[1], for defamation per se, tortious interference with prospective economic advantage, and both false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a). Defendant Teslar moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the amended complaint against it for failure to state a claim. The motion is granted.

       Plaintiff and defendant Teslar are watch designers and manufacturers. This action has its genesis in a prior infringement action commenced by Teslar against plaintiff and ShopNBC.com in the United States District Court, for the Southern District of Florida. In that action, Teslar claimed that plaintiff "infringed Teslar's trademark rights." (Am. Compl. ¶ 13). The action was resolved as a result of the parties entering into a settlement agreement under which no party admitted fault. The parties submitted, to the Florida district court, their draft of the Final Consent Judgment and Order of Permanent Injunction ("Consent Judgment") which incorporated

---

[1] On June 6, 2006, this Court so-ordered plaintiff's voluntary dismissal of the action against VNU Business Media, Inc., which plaintiff incorrectly sued as National Jeweler Magazine, Inc..

the specific terms previously agreed upon by the parties.

The proposed Consent Judgment was adopted verbatim, and signed by the Florida district judge.  The Consent Judgment states that "Teslar maintains that the Croton Watch is an illegal 'knock-off,' which infringes upon Teslar's Trade Dress.  Croton . . . den[ies] this accusation.  Nevertheless, subsequent to the filing of this suit, Croton . . . agreed to cease their sales of the Croton Watch.  At the time they ceased sales, they had sold 116 pieces of the Croton Watch.  Furthermore, Croton . . . affirmatively represent[s] that they have ceased selling and are no longer in possession or control of any remaining Croton Watches."  (Consent Judgment ¶ 8).

The court's order permanently enjoined Croton from "marketing, advertising, promoting, selling, or offering to sell, directly or indirectly, the Croton watch or any other watch containing Teslar's Trade Dress in the Philip Stein Two-dial Watches."  (Id. ¶ 10(1) ).  Croton was further "ordered to destroy their current and in-process inventory, if any, of all of the Croton Watches, which violate this ORDER OF PERMANENT INJUNCTION."  (Id. ¶ 10(2) ).  The Consent Judgment recites that it is being entered into by the parties "[t]o avoid additional cost of litigation."  (Id. ¶ 10).

This lawsuit "is predicated on an article [ ] published by National Jeweler . . ." (Pl.'s Mem. at 4).[2]  The article appeared in the section designated by National as "a roundup of some of the top stories" in the watch industry.  The six sentence article is entitled, "*Philip Stein Teslar wins trademark case*."  The opening sentence of the article reports that Teslar has announced that

---

[2]  Plaintiff maintains that "Defendant National Jewelers Magazine, Inc. [ ] is a widely read and extremely influential publication in the industry." (Pl.'s Mem. at 4).  The amended complaint quotes National's website as describing the publication as "the world's most important jewelry resource" which "presents up-to-the minute news to its readers."  (Am. Compl. ¶ 10).

it "has won a trademark infringement case" against plaintiff.  It further reports that the "judge ruled" that plaintiff's watch "violated Philip Stein Teslar's trade dress protection."[3]

Plaintiff maintains that the article contains defamatory statements against it.  Plaintiff contends that both the title and the content of the article indicating that Teslar won its trademark action against plaintiff are false and misleading because the parties entered into a settlement agreement.  Hence, plaintiff argues that Teslar was not victorious in its lawsuit.  Additionally, plaintiff claims it was defamed by the statement that "the judge ruled" that plaintiff "violated Philip Stein Teslar's trade dress protection," because no party admitted any wrongdoing, and the Consent Judgment makes no judicial findings in this regard.  Plaintiff further argues that the article falsely indicates that the underlying action was a trademark case, "[b]ut the Florida action did not assert trademark infringement." (Pl.'s Mem. at 8).  Finally, plaintiff takes issue with the picture depicted in the article which bears the caption, "The Croton Unisex Stainless Steel Duel Time Watch by Phillip Stein Teslar."  Plaintiff contends that this is "a picture of Croton's allegedly infringing watch (the caption specifically states it is the Croton watch), yet the picture

---

[3] The full article reads as follows:
**Philip Stein Teslar wins trademark case**
Philip Stein Teslar has won a trademark infringement case against a manufacturer and a home shopping network, the company has announced.
U.S. District Court Judge Alan S. Gold issued a permanent injunction in New York's (sic) federal court in mid-December, ordering Croton Watch Co. to stop producing, and both it and ShopNBC to stop selling a watch that resembles the style of Phillip Stein Teslar watches.
The judge ruled that the "Croton Unisex Stainless Steel Dual Time Zone Watch," of which ShopNBC sold 116 pieces, violated Philip Stein Teslar's trade dress protection of its two-dial design.  The watch did not contain the "Teslar technology" Philip Stein Teslar claims helps the body reinforce its own electromagnetic field against potential negative effects of low-energy electromagnetic pollution, court papers said.
Croton and ShopNBC agreed to cease sales of the watch, which was introduced in July.  The judgment ordered both parties to destroy their current and in-process inventories of the timepiece.

is actually one of a Teslar watch, and not one sold by Croton." (Am. Compl. ¶ 22).

Although Teslar is not accused of writing the article, plaintiff attributes the source of the objectionable statements to Teslar. Plaintiff alleges that "representatives of defendant Teslar and defendant National Jeweler discussed the terms of the settlement agreement[,]" and that the article was published "[f]ollowing that discussion." (Id. ¶ 16). Plaintiff claims that "Defendant Teslar knowingly made false and defamatory statements about Plaintiff Croton to National Jeweler, including statements about Teslar's supposed victory against Croton in court and that the judge found Croton's watch to infringe on Teslar's trademark." (Id. ¶ 17). Plaintiff further alleges that "[m]ore recently, [Croton's] counsel learned that National Jeweler magazine prepared this article based on a press release issued by Teslar. In other words, the National Jeweler Magazine article is based on a press release by Teslar which interpreted the press release as describing a victory for Teslar in the litigation, by the court finding in favor of Teslar and against Croton on the disputed issues." (Id. ¶ 35).

Plaintiff contends that "Teslar made these false and defamatory statements to Defendant National Jeweler to bolster the reputation and standing of Philip Stein Teslar and with an intent to harm competitor Croton's business reputation." (Id. ¶ 25). Plaintiff alleges that "Croton's competitors, in reading the National Jeweler article, were led to believe that Croton has weak trademark protection and presents a ripe target for litigation, subjecting Croton to expensive legal costs." (Id. ¶ 33). Plaintiff further claims that "Croton's reputation and standing as a respected leader in the watch and jewelry business was severely damaged by the National Jeweler article, which portrayed Croton as a manufacturer of 'knock offs,' which damages Croton's business reputation, integrity and creditworthiness by insinuating that Croton acts illegally." (Id. ¶ 34).

Plaintiff claims that "[b]ased on the false information in the article that Croton watches were found to be infringing on Teslar's tratdemarks, potential retailers of Croton's watches are now hesitant to sell Croton watches for fear of being targeted like ShopNBC.com was, in similar lawsuits against Croton." (Id. ¶ 32). Additionally, plaintiff contends that its "customers will be reluctant to purchase the same large quantities of watches, at the same price premium, that they did before the article was published." (Id. ¶ 34). Plaintiff specifically notes that "[w]ith respect to at least two customers, who are distributors of Croton watches, [Croton] ha[s] seen the sales of Croton watches decline, owing to the loss of distributors' interest in promoting Croton watches following publication of the mentioned article." (Id.¶ 36).

## MOTION TO DISMISS STANDARD

In reviewing a complaint for dismissal under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). The complaint should only be dismissed where it appears beyond doubt that plaintiff can present no set of facts entitling it to relief. Conley v. Gibson, 355 U.S. 41, 46 (1957); Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). On a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), the Court is precluded from considering matters outside of the complaint. Courtenay Commc'n, Corp. v. Hall, 334 F.3d 210, 213 (2d Cir. 2003). In this regard, a complaint includes any written instrument attached as an exhibit and any statements or documents incorporated by reference into the complaint, or any matter of which judicial notice may be taken. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (*quoting* Int'l

Audiotext Network, Inc. v. Am. Tel. & Tel., Co., 62 F.3d 69, 72 (2d Cir. 1995)).[4]

## DEFAMATION PER SE[5]

Teslar argues that the complaint fails to state a cognizable claim for defamation per se because the challenged statements are either completely true or, at the very least, substantially true. Teslar further argues that even if the statements were deemed to be defamatory, the cause of action must still be dismissed because the article's content falls within the limited protection of New York's "single instance exception."

"Under New York law, the elements of a defamation claim are 'a false statement, published without privilege or authorization to a third party, constituting fault . . . and it must either cause special harm or constitute a defamation per se.'" Peters v. Baldwin Union Free Sch. Dist., 320 F.3d 164, 169 (2d Cir. 2003) (*quoting* Dillon v. City of New York, 704 N.Y.S.2d 1, 5

---

[4] Annexed to the amended complaint is a copy of the subject article. Teslar has submitted copies of the Final Consent Judgment and Order of Permanent Injunction and the Notice of Settlement and Agreed Motion for Entry of Final Consent Judgment. These submissions are deemed to be incorporated into the amended complaint.

[5] When jurisdiction is based upon diversity, a federal court applies the choice-of-law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). In an action for defamation, "New York assumes that the state of the plaintiff's domicile will usually have the most significant interest in the case and that its law should therefore govern." Celle v. Filipino Reporter Enter. Inc., 209 F.3d 163, 175 (2d Cir. 2000) (citation omitted). In the case at bar, a choice-of-law analysis is unnecessary given the fact that the briefs submitted by plaintiff and the movant rely exclusively on New York law. Since the parties assume New York law controls this issue, "implied consent . . . is sufficient to establish choice of law." Krumme v. WestPoint Stevens, Inc., 238 F.3d 133, 138 (2d Cir. 2000) (*quoting* Tehran-Berkeley Civil & Envtl. Eng'r v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989)); Hannex Corp. v. GMI, Inc., 140 F.3d 194, 203 n. 7 (2d Cir. 1998). Thus, New York law will govern this dispute notwithstanding the fact that plaintiff is a New Jersey corporation and Teslar is incorporated in Florida.

(N.Y. App. Div. 1999)).  Defamation may take the form of a published written expression (including pictures), *i.e.*, libel, or a published oral expression, *i.e.*, slander.  See, Celle, 209 F.3d at 176 (citations omitted); Albert v. Loksen, 239 F.3d 256, 265 (2d Cir. 2001); Ostrowe v. Lee, 175 N.E. 505, 506 (N.Y. 1931); Glendora v. Kofalt, 616 N.Y.S.2d 138, 144 (N.Y.Sup.Ct. 1994) (*quoting* 43 N.Y.Jur.2d, Defamation and Privacy § 1), *order modified*, 637 N.Y.S.2d 780 (N.Y. App. Div. 1996).  For purposes of defamation, "publication" is a term of art.  Albert , 239 F.3d at 269 (*quoting* Ostrowe, 175 N.E. at 505).  "A libelous writing is published when it is read by a person other than the author and the one defamed.  Similarly, a slanderous statement is published and therefore actionable when it is heard by some third party."  Barber v. Daly, 586 N.Y.S.2d 398, 400 (N.Y. App. Div. 1992) (citations omitted).  A defendant cannot be held liable for defamation where it did not make or publish the statement at issue.  See, Khan v. New York Times Co., Inc., 710 N.Y.S.2d 41, 46 (N.Y. App. Div. 2000) ("It is axiomatic that a defendant cannot be held liable for a libelous statement that it did not write or publish.").

> A statement is defamatory if it "exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induce[s] an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society.'"  Celle, 209 F.3d at 177 (*quoting* Kimmerle v. New York Evening Journal, 186 N.E. 217, 218 (N.Y. 1933)).  The general rule is that a "statement which '*tends* to disparage a person in the way of his office, profession or trade' is defamatory per se."  Id. at 179 (*quoting* Davis v. Ross, 754 F.2d 80, 82 (2d Cir. 1985)) (emphasis in original); see also, Gjonlekaj v. Sot, 764 N.Y.S.2d 278, 281 (N.Y. App. Div. 2003) ("[A] defamatory statement is libelous *per se* if it imputes fraud, dishonesty, misconduct, or unfitness

7

in conducting one's profession."); Herlihy v. Metro. Museum of Art, 633 N.Y.S.2d 106, (N.Y. App. Div. 1995) ("Words which have a tendency to disparage an individual, *inter alia*, in the way of [his] office, profession, trade or business are slanderous per se.").

With regard to business entities, statements which impugn the basic integrity, creditworthiness, or competence of the business are defamatory per se. Celle, 209 F.3d at 180; Ruder & Finn Inc. v. Seaboard Surety Co., 439 N.Y.S.2d 858, 862 (N.Y. 1981); Drug Research Corp. v. Curtis Publishing Co., 199 N.Y.S.2d 33, 37 (N.Y. 1960). Statements have been found to be defamatory per se where they indicate the company is insolvent, ineptly operated, renders substandard goods or services, or commits unethical or highly unprofessional conduct. See eg., First Nat. Bank of Waverly v. Winters, 121 N.E. 459, 461 (N.Y. 1918) (attack on business methods which would necessarily destroy public confidence in company's integrity); Arts4all, Ltd. v. Hancock, 773 N.Y.S.2d 348, 352 (N.Y.App.Div. 2004) (company is poorly run); Daniel Goldreyer, Ltd. v. Van de Wetering, 630 N.Y.S.2d 18, 23 (N.Y. App. Div. 1995) (highly unprofessional conduct); Gatz v. Otis Ford, Inc., 691 N.Y.S.2d 113 (N.Y. App. Div. 1999) (company was dishonest, committed fraud, and "ripped off" customer); John Langerbacher Co., Inc. v. Tolksdorf, 605 N.Y.S.2d 34, 35 (N.Y. App. Div. 1993) (company will suffer financial problems, be operated by incompetents, and unable to fulfill its commitments as to quality and time); Greyhound Secs., Inc. v. Greyhound Corp., 207 N.Y.S.2d 383 (N.Y. App. Div. 1960) (company's action was "deceptive per se"); Le Dans, Ltd. v. Daley, 200 N.Y.S.2d 618 (N.Y. App. Div. 1960) (fraudulent business methods); Baywood Estates Inc. v. Time/Review Newspapers, Inc., 1991 WL 269104, at *2 (N.Y.Sup.Ct. 1991) (company filing for bankruptcy); Great South-Western Collection Corp. v. Rosoff, 242 N.Y.S.2d 678, 681 (N.Y.Sup.Ct. 1963)

(shameful, dishonest and unethical business practices).

Where the subject statement is not defamatory per se, special damages must be pled. "Special damages contemplate 'the loss of something having economic or pecuniary value.'" Liberman v. Gelstein, 590 N.Y.S.2d 857, 860 (N.Y. 1992) (*quoting* Restatement § 575, comment b); see also, Sharratt v. Hickey, 799 N.Y.S.2d 299, 301 (N.Y. App. Div. 2005) ("Plaintiffs in a defamation action must prove special damages, meaning economic or financial loss, unless they fit within an exception in which damages are presumed, *i.e.*, defamation per se."). Where the statement is defamatory per se, "general damages to the reputation of the business are presumed." Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 58 (2d Cir. 2002) (citations omitted). Accordingly, special damages need not be pled in an action for defamation per se because injury is presumed. Celle, 209 F.3d at 179; Liberman, 590 N.Y.S.2d at 860-61.

The determination of whether the words at issue are defamatory presents a legal question to be resolved, in the first instance, by the court. Celle, 209 F.3d at 177 (*quoting* Aronson v. Wiersma, 493 N.Y.S.2d 1006, 1007 (N.Y. 1985)). The challenged language must not be viewed in isolation, but rather the language must be afforded a fair reading in the context of the article as a whole. Id. The language should be construed in terms of how it would be understood by an average reader of such a periodical against the whole apparent scope and intent of the writing. Id. Since the subject article appears in a jewelry and watch trade magazine, the meanings of the statements must be determined in accordance with "the average and ordinary reader 'acquainted with the parties and the subject matter.'" Gjonlekaj, 764 N.Y.S.2d at 281 (*quoting* November v. Time, Inc., 244 N.Y.S.2d 309, 312 (N.Y. 1963)); see also, Celle, 209 F.3d at 177 ("'[T]he words are to be construed not with the close precision expected from lawyers and judges but as they

9

would be read and understood by *the public to which they are addressed*.'") (*quoting* November, 244 N.Y.S.2d at 312) (emphasis in original). It is the meaning reasonably attributable to the intended reader that controls. Celle, 209 F.3d at 177-78.

Truth is an absolute and unqualified defense to a claim based on defamation. Guccione v. Hustler Magazine, Inc., 800 F.2d 298, 301 (2d Cir. 1986) (*quoting* Commonwealth Motor Parts Ltd. v. Bank of Nova Scotia, 355 N.Y.S.2d 138, 141 (N.Y. App. Div. 1974), *aff'd*, 377 N.Y.S.2d 482 (N.Y. 1975)); Printers II, Inc. v. Prof'l Publ'g, Inc., 784 F.2d 141, 146 (2d Cir. 1986) (citations omitted); Jewell v. NYP Holdings, Inc,. 23 F.Supp.2d 348, 366 (S.D.N.Y. 1998); Kamalian v. Reader's Digest Ass'n, Inc., 814 N.Y.S.2d 261, 262 (N.Y. App. Div. 2006); Love v. William Morrow & Co., Inc., 597 N.Y.S.2d 424, (N.Y. App. Div. 1993). In this regard, the truth of the statements "need not be established to an extreme literal degree." Love, 597 N.Y.S.2d at 426 (citation omitted); see also, Karedes v. Ackerley Group, Inc., 423 F.3d 107, 113 (2d Cir. 2005) ("As to falsity, '[t]he accuracy of the report should be assessed on the publication as a whole, not isolated portions of it,' and a 'defendant is held only to a standard of substantial, not literal, accuracy.'") (*quoting* Law Firm of Daniel P. Foster, P.C. v. Turner Broad. Sys., Inc., 844 F.2d 955, 959 (2d Cir. 1988)). The purportedly defamatory statements need only be substantially true, so that minor inaccuracies cannot give rise to an actionable defamation claim. Love, 597 N.Y.S.2d at 426. "It is only necessary that the gist or substance of the challenged statements be true." Printers II, 784 F.2d at 146-47 (citations omitted). An alleged defamatory statement will be deemed to be substantially true, and hence "not actionable if the published statement could have produced no worse an effect on the mind of a reader than the truth pertinent to the allegation." Gucci, 800 F.2d at 302 (*citing* Fleckenstein v. Friedman, 193 N.E. 537, 538 (N.Y.

1934)); accord, Love, 597 N.Y.S.2d at 426; see also, Meloff v. New York Life Ins. Co., 240 F.3d 138, 146 (2d Cir. 2001) ("Substantial truth turns on the understanding of the 'average reader.'") (citations omitted).

Plaintiff objects to the title, as well as the context of the article, which indicated that Teslar won its lawsuit.[6]  Those challenged statements are either truthful, or substantially truthful, and accordingly do not give rise to an actionable claim for defamation per se.  Plaintiff maintains that a finding that plaintiff was victorious in its lawsuit is precluded by the fact that the action was terminated as a result of the parties entering into a settlement agreement which did not contain an admission of culpability by any of the parties.  A plaintiff may be considered victorious in its lawsuit because its efforts resulted in it achieving a beneficial result, which it would have unlikely obtained absent the filing of the action.  Such a "victory" exists independent

---

[6] Plaintiff alleges two means by which Teslar provided National with the information in the article, *i.e.*, a direct conversation with Teslar's representatives and Teslar's press release.  To the extent the defamation claim is predicated on the press release, it fails.  Plaintiff alleges that "the National Jeweler Magazine article is based on a press release by Teslar which interpreted the press release as describing a victory for Teslar in the litigation, by the court finding in favor of Teslar and against Croton on the disputed issues." (Am. Compl. ¶ 35).  Anyone giving a statement to a representative of a newspaper authorizing or intending its publication is responsible for any damages caused by the publication."  Campo v. Paar, 239 N.Y.S.2d 494, 368 (N.Y. App. Div. 1963) (citation omitted); see also, Schoepflin v. Coffey, 56 N.E. 502 (N.Y. 1900) (Finding complaint failed to state viable claim for libel where it alleged defendant spoke slanderous words in the presence of reporters but did not contained any direct allegations that defendant caused his words to be printed or published by news media.); Rubenstein v. Manhattan & Bronx Surface Operating Auth., 1997 WL 833456, at *6 (E.D.N.Y. Oct. 8, 1997) ("[A]n original publisher will be liable for the republication of his libelous statement if he gave a statement to a representative of a newspaper authorizing or intending that it be republished.") (citations omitted).  A defendant, however, can only be held liable "to the extent that the article represents an accurate statement of what defendant said . . ." Campo, 239 N.Y.S.2d at 367-68.  Plaintiff alleges that the challenged statements in the article are the result of National "interpret[ing] the press release." Although Teslar can be held liable for the defamatory statements it originally made and which it caused to be republished, it cannot be held responsible for a third party's independent interpretation as to the meaning of Teslar's statements.

11

of whether plaintiff secures a favorable legal ruling on the merits whereby its legal rights or claims are vindicated.  A win with respect to the "substantive relief" sought is not dependent on whether plaintiff won the "substantive merits" of the lawsuit.  See generally, Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 617 (2001) (Scalia, J., concurring) (In laymen's terms, where defendant settles because the financial cost of litigation would be too great, "the plaintiff may have 'prevailed' as Webster's [dictionary] defines the term - - 'gain[ed] victory by virtue of strength or superiority * * * in financial resources . . .  rather than *superiority in legal merit . . .*") (*quoting* Webster Third New International Dictionary 1797 (1976)).  In the underlying litigation between the parties, Teslar was successful in obtaining a permanent injunction prohibiting the sale of the Croton watch. Accordingly, the references to Teslar winning its lawsuit cannot be deemed to be actionable false statements.

Similarly unavailing is plaintiff's claim that it was defamed because there were two references in the article that Teslar's victory was in relation to a trademark infringement case.  In opposing Teslar's motion, plaintiff claims that "the Florida action did not assert trademark infringement."  (Pl.'s Mem. at 8).  Plaintiff's amended complaint, however, specifically states that "Teslar filed an action in the Federal District Court for the Southern District of Florida against Croton . . . alleging that Croton infringed Teslar's trademark rights."  (Am. Compl. ¶ 13). The nature of the case filed is not altered by the fact that the Consent Judgment indicates that Teslar's claim is for trade dress infringement.  Additionally, the article does specifically indicate that the litigation involved Teslar's trade dress protection.  In any event, for purposes of infringement, there is very little significance in the substantive difference between trademark and

trade dress claims.  See generally, Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 774 (1992); see also, Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc., 781 F.2d 604, 608 (7th Cir. 1986); Score, Inc. v. Cap Cities/ABC, Inc., 724 F.Supp. 194, 197 (S.D.N.Y. 1989).  In an action for either trademark or trade dress infringement, a defendant is accused of engaging in a commercial activity which infringes upon protected exclusive rights.  Thus, the references in the subject article that the underlying action was for trademark infringement would have no appreciable effect on the minds of National's readers than had the article only reported that the case was for dress trade infringement.[7]

Plaintiff also objects to the article because it states that "[t]he judge ruled" that the plaintiff's watch "violated . . . Teslar's trade dress protection."  Although no legal findings were rendered on the merits of the underlying action, the court ordered destruction "of all the Croton Watches which violate" the Final Consent Judgment and Order of Permanent Injunction.

A consent judgment is a judicial act.  Pope v. United States, 323 U.S. 1, 12 (1944) (citations omitted).  "'[T]he judgment is not an *inter partes* contract; the Court is not properly a

---

[7] Plaintiff also claims it was defamed because the article "included a picture of Croton's allegedly infringing watch" and the accompanying caption states it is a Croton watch, but in fact it is a Teslar watch and not one sold by Croton. (Am. Compl. ¶ 22).  Plaintiff notes that the pictured watch "bears the trademark 'Philip Stein'" and that "[t]he Consent Judgement explicitly acknowledges that Croton was selling watches under its own CROTON trademark." (Pl.'s Mem. at 8).  The amended complaint fails to contain any factual allegations from which it can be inferred that Teslar provided the picture to National or took an active role in composing the language in the caption.  In any event, nowhere in the article is the photograph identified as the infringing watch at issue, nor does the caption definitively identify the watch as being either a Teslar or Croton watch.  The caption refers to the depicted watch as "The Croton Unisex Stainless Steel Dual Time Zone Watch by Philip Stein Teslar."  Therefore, the caption, when read in conjunction with the referenced picture, is not reasonably susceptible to a defamatory meaning.

recorder of contracts, but is an organ of government constituted to make judicial decisions and when it has rendered a consent judgment it has made an adjudication.'" Local Number 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland, 478 U.S. 501, 538 (1986) (Rehnquist, J., dissenting) (*quoting* 1 B J. Moore, J. Lucas, & T. Currier, Moor's Federal Practice ¶ 0.409[5], pp. 330-331 (1984)); see also, A.D. Juilliard & Co. v. Johnson, 166 F.Supp. 577, 585 (S.D.N.Y. 1957 ) (Observing that a consent judgment has the same force and effect as any other judgment; it is a final adjudication, adjudicating both the plaintiff's right of recovery and the extent of it.), *aff'd*, 259 F.2d 837 (2d Cir. 1958).

  Besides ordering Croton to destroy any and all inventory of the subject Croton watches which violate its order, the court also permanently barred plaintiff from ever "marketing, advertising, promoting, selling, or offering to sell" the Croton watch at issue, as well as "any other watch containing Teslar's trade dress in the Philip Stein Two-dial Watches."  Having obtained this judicial relief, Teslar deemed it unnecessary to further litigate its infringement action.  The court's order clearly strips plaintiff of any legal right to manufacture or sell the claimed infringing watch.  In light of the entire context and tone of the article reporting the judicial resolution of Teslar's infringement action against plaintiff, the single reference to a judicial ruling would not alone be the cause for the average reader to cast aspersions on plaintiff's integrity or business practices.  Moreover, the statement at issue does not indicate that plaintiff was found to have wilfully or intentionally committed purposeful infringement.  See, Mendez v. Holt, 128 U.S. 514, 523 (1888) ("The intentional use of another's trade-mark is a fraud . . .").  A party may innocently and unknowingly infringe on another's trade dress infringement.  Thus, a legal finding of trade dress infringement does not alone suggest that the infringer acted willfully,

intentionally, or fraudulently.  See, Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 1004 (2d Cir. 1997) ("[T]he intentionally copying of a product --by itself-- generally is not relevant to a trade dress infringement claim.").  Hence, the statement is not false and defamatory per se.

A reasonable interpretation of the article is that plaintiff's manufacture and sale of the Croton watch was a single trade dress violation.  It does not suggest any intentional conduct.  The statement, therefore, falls within the purview of New York's single instance exception rule, and hence is not actionable.  The "single instance rule" is a narrow exception to the general rule that statements tending to disparage a person's professional standing is defamatory per se.  Celle, 209 F.3d at 180.  The rule applies to business entities as well as to individuals.  See, RMS Tech., Inc. v. NYNEX Computer Serv. Co., 1993 WL 763469, at *3 (N.Y.Sup.Ct. June 21, 1993).   In Celle, *supra*, the Second Circuit Court of Appeals provided an in-depth analysis of the single instance rule:

> [The rule] applies where a publication charges a professional person with a *single error in judgment*, which the law presumes not to injure reputation.  Under this rule[,] . . . a statement charging an individual with a *single dereliction* in connection with his or her trade, occupation, or profession does not necessarily charge that party with general incompetence, ignorance or lack of skill and is not deemed actionable unless special damages are pleaded and shown.  In applying it, New York recognizes the human tendency to err, and that, therefore, to state that even a businessman or professional person has erred in a particular instance would not presumptively cause damage to that person in his business or profession, because such statements would imply no more that the person was human.  The single instance exception does not apply where a statement or publication that refers to a single instance imputes a general unfitness or unskillfulness, suggesting more than mere human error.  As its appellation implies, the single instance exception does not apply where a publication or article charges a plaintiff with multiple wrongful acts or lapses in judgment.  Celle, 209 F.3d at 180-81 (internal citations, parentheticals,  and quotation marks omitted) (emphasis in original).

In the instant case, the subject statement refers to the production and sale of "116 pieces of the Croton Watch." (Consent Judgment ¶8). The statement does not suggest plaintiff's general incompetence, ignorance, or lack of skills. Stating that plaintiff's action infringed the trade dress protection with regard to a single product, without any indication that it was done wilfully, fraudulently, or even with knowledge of defendant's trade dress, does not charge plaintiff with conduct that exhibits such a lack of character that it renders plaintiff professionally unfit. Thus, the statement at issue does not malign the inherent integrity of the plaintiff. Although a statement detailing a lone instance of improper conduct may have some adverse effect on one's business or reputation, it "does not transform one critical assertion into a course of conduct." See, Flynn Seafood, Inc. v. Sailboat Imp. & Exp. Trading Inc., 1998 WL 695909, at *3 (S.D.N.Y. Oct. 6, 1998). Accordingly, the statement indicating infringement is subject to the single instance rule. Since plaintiff has failed to plead special damages, dismissal of the defamation cause of action is warranted.

**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

The amended complaint also fails to state a legally cognizable claim for tortious interference with prospective economic advantage. To state such a claim, under New York law, "the plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." Kirsh v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006) (*quoting* Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003)). As a general

16

rule, the defendant's conduct must be criminal or independently tortious in order to satisfy the third element. Carvel Corp. v. Noonan, 785 N.Y.S.2d 359, 362 (N.Y. 2004). An exception to this rule exists "where a defendant engages in conduct 'for the sole purpose of inflicting intentional harm on plaintiff[].'" Id. (*quoting* NBT Bancorp, Inc. v. Fleet/Norstar Fin. Group Inc., 628 N.Y.S.2d 408, 410 (App. Div. 1995), *aff'd*, 641 N.Y.S.2d 581 (N.Y. 1996)).[8] Where the interference was motivated by the normal economic self-interest of the defendant, the defendant cannot be found to have acted for the sole purpose of inflicting intentional harm. Id.

The factual allegations in the amended complaint fail to show that the defendant's acts constitute a crime, an independent tort, were motivated by malice, or were of a particularly egregious nature. Plaintiff does not argue that defendant's conduct was criminal or constituted any other independent tort other than defamation per se. (Pl.'s Mem. at 12). The failure of plaintiff to state a cognizable claim for defamation precludes plaintiff from premising its tortious interference cause of action upon the purportedly defamatory conduct. See eg., Treppel v. Biovail Corp., 2005 WL 2086339, *5 (S.D.N.Y. Aug. 30, 2005) (Since court found that no defamatory statements were attributable to defendants, tortious interference with prospective economic advantage could not survive premised solely upon allegations of non-defamatory conduct.); Cooper v. Hodge, 814 N.Y.S.2d 447, 449 (N.Y. App. Div. 2006) (Substantially true statements could not make out defamation claim, and the utterance of such statements did not amount to a crime or independent tort, as a matter of law, to support tortious interference with prospective contractual relations.). Moreover, the pleadings do not provide any basis to infer

---

[8] The New York Court of Appeals left unresolved the question as to whether other exceptions may also exists where the subject conduct is so egregious in nature, yet is neither criminal nor tortious in its own right. Carvel, 758 N.Y.S.2d at 362-63.

Teslar acted solely out of malice, as oppose to acting in its own financial interest.  Since the pleadings fail to make out a requisite element of tortious interference with prospective economic advantage, that claim is dismissed.

### FALSE ADVERTISING AND UNFAIR COMPETITION

The amended complaint charges Teslar with false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a).  In pertinent part, the Lanham Act prohibits any person from using in commerce any false or misleading description of fact, or false or misleading representation of fact, which "in commercial advertising or promotion," misrepresents the nature, characteristics, or qualities of another person's goods, services or commercial activities.  15 U.S.C. § 1125(a)(1)(B).  The amended complaint alleges that "[t]he article itself was extremely commercial in nature."  (Am. Compl. ¶ 57).  Plaintiff alleges that "[t]here was no journalistic aspect to the article," but rather "[t]he article was in fact an advertisement masquerading as a news story, promoting Teslar's reputation while disparaging that of Croton's."  (Id. ¶¶ 57, 58).  Plaintiff acknowledges that it is not claiming that Teslar wrote or published the article, but rather that "Teslar was the motivating force behind the article." (Pl.'s Mem. at 15).  Plaintiff alleges that National "gave the 'free press' to Teslar in hopes of obtaining a more permanent advertising arrangement."  (Am. Compl. ¶ 57).

"In this circuit, to constitute 'commercial advertising or promotion' under the Lanham Act, a statement must be: (1) 'commercial speech,' (2) made 'for the purpose of influencing consumers to buy defendant's goods or services,' and (3) 'although misrepresentations less formal than those made as part of a classic advertising campaign may suffice, they must be

disseminated sufficiently to the relevant purchasing public.'" Gmurzynska v. Hutton, 355 F.3d 206, 210 (2d Cir. 2004) (*citing* Fashion Boutique of Short Hills, 314 F.3d at 56); see also, Boule v. Hutton, 328 F.3d 84, 90-91 (2d Cir. 2003).[9]  "Commercial speech is 'speech which does no more than propose a commercial transaction.'" Gmurzynska, 355 F.3d at 210 (*quoting* City of Cincinnati v. Discovery Network, In., 507 U.S. 410, 422 (1993)).

A plaintiff cannot adequate plead a violation of the Lanham Act by simply alleging that defendant caused a journalist to write the article, the content of which plaintiff finds objectionable.  "[A] journalist's article is not commercial advertising, commercial promotion, or commercial speech.  Rather, it is speech that is traditionally granted full protection under the First Amendment."  Id. at 210-11; see also, Boule, 328 F.3d at 91-92.  The non-commercial nature of a journalist's article cannot be overcome by plaintiff claiming an improper purpose motivated the publisher to run the article.  See eg., Donini Int'l, S.P.A. v. Satec (U.S.A.) LLC, 2004 WL 1574645, at *7 (S.D.N.Y. July 13, 2004) (Although sole proprietors of trade magazine were "members of" competing company, allegations of a conspiracy cannot transform the article into commercial speech regardless of the truth or falsity thereof, or the degree to which the article was critical of plaintiff.).

National describes its publication as providing "up-to-the minute news to its readers," and plaintiff acknowledges that National is "the world's most important jewelry resource."  (Am.

---

[9] The "commercial advertising or promotion" standard, enunciated by the Second Circuit in Fashion Boutique, *supra*, adopted three of the four elements in the test set forth in Gordon & Breach Sci. Publishers S.A. v. Am Inst. of Physics, 859 F.Supp. 1521, 1535-36 (S.D.N.Y. 1994). The Second Circuit declined to rule whether the fourth prong of the Gordon & Breach test, requiring that defendant and plaintiff be competitors, is a necessary element to find commercial advertising and promotion. Gmurzynska, 355 F.3d at 210; Boule, 328 F.3d at 91.

Compl. ¶¶ 10, 31). The article was substantially accurate, and concerns the resolution of an infringement action between two watch manufacturers. Such a report would be a relevant subject matter of interest to the readers of National. The factual allegations in the amended complaint fail to provide any basis to infer that the article was not a true news piece. Accordingly, the article does not constitute commercial speech, for purposes of the Lanham Act, thereby necessitating the dismissal of the claim for false advertising and unfair competition. See eg., Engineered Prods. Co. v. Donaldson Co., Inc., 165 F.Supp.2d 836, 867 n.21 (N.D.Iowa 2001) (Where there is nothing to suggest article reporting the filing of a patent infringement suit was anything other than a legitimate news item, publication does not constitute commercial speech.).

## CONCLUSION

The amended complaint fails to state a claim upon which relief may be granted.[10] Accordingly, defendant Teslar's motion to dismiss is granted, and the complaint is dismissed in its entirety.

Dated: New York, New York
       August 7, 2006

SO ORDERED:

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge

---

[10] Plaintiff requested leave to amend the complaint if Teslar's motion was granted. The deficiencies in the pleadings are substantive in nature, and hence cannot be cured by affording plaintiff a further opportunity to amend the complaint. Granting plaintiff leave to amend is, therefore, unwarranted, and denied. See, Foman v. Davis, 371 U.S. 178, 182 (1962).